[Civ. No. 6495. Third Appellate District.—November 13, 1940.]

FRANK VERO, as Guardian, etc., Petitioner, v. SACRAMENTO CITY EMPLOYEES' RETIREMENT SYSTEM et al., Respondents.

George L. Popert and Earl D. Desmond for Petitioner.

Hugh B. Bradford, City Attorney, and Reynald J. Bianchi for Respondents.

THE COURT.—Manuel Vero, who died in October, 1938, as the result of injuries received in the performance of his duties as a member of the fire department of the city of Sacramento, had served as a fireman in that department continuously since April, 1919, to the date of his death.

At the time of his death he left surviving his wife, Edith Vero and a minor daughter, then of the age of twelve years.

For many years prior to the death of Vero, the City of Sacramento had maintained a pension or retirement system for its employees. Pursuant to an amendment to the city charter in 1935, firemen contributed four per cent of their gross annual salary into the retirement fund, which contributions were matched by contributions of an equal amount by the city, and at the time of his death Vero was a contributing member in good standing and was receiving from the city a monthly salary of $200.

Following the death of Vero, a demand was filed with the retirement board for the payment to his widow of an allowance as provided by section 173 (e) (1) of the charter, which provides that in the event a member of the system dies as a result of injuries received in the performance of his duty, his widow, as long as she remains unmarried, shall be paid an allowance equal to one-half of the monthly salary of the deceased member at the time of his death.

While this demand was still pending before the retirement board, and more than one year after the death of Vero,

the City of Sacramento filed an application with the state Industrial Accident Commission, claiming that there was an industrial dispute between the city and the widow and minor child of the deceased fireman, because of the death of Vero.

In due time the commission made its findings and award against the city and in favor of the widow and minor child of $5,000, payable to them at the rate of $25 each week. This award has now become final.

Thereafter, the retirement board granted Mrs. Vero a death allowance in accordance with the foregoing charter provisions, but directed that such portion of any allowance payable because of the death of Vero, which was provided by contributions of the city, should be reduced by the amount of any benefits payable on account of the death of Vero under the Workmen's Compensation Insurance and Safety Law of this state.

Upon the refusal of the board to pay to the widow the death allowance in full, petitioner, as guardian of the widow, who is now insane, sought by mandate to compel the board to make the payments without any deduction or offset.

Respondents contend that petitioner is seeking a double payment for the same injury and death—once under the award of the Industrial Accident Commission, and again under the retirement system of the city. It is also claimed that section 172 of the city charter is authority for the action taken by the city and the retirement board.

We are of the opinion petitioner is entitled to the relief here sought. We fail to find in section 172 of the charter, authority to make any deduction from the allowance to the widow.

Section 172 reads as follows:

"Sec. 172. Any city employee who shall become physically disabled by reason of any bodily injury received in the performance of his duty, shall be entitled to such medical, surgical, and hospital treatment, including nursing, medicines, and medical and surgical supplies and apparatus, as may be required on account of such injury, the same to be provided by the city. Such injured employee shall receive full pay from the city during the continuance of his disability or until retired upon a retirement allowance, but not to exceed one year. That portion of any allowance payable because of the death or retirement of any such employee which is pro-

vided by contributions of the city shall be reduced, in the manner fixed by the City Council, by the amount of any benefits payable to or on account of such person, under the Workmen's Compensation Insurance and Safety Law of the State of California. The City Council may provide for the administration of each case under this section by the City Manager independently of the Retirement Board, until the retirement of the injured employee."

Prior to the enactment of this section no provision seems to have been made for caring for a city employee injured in the performance of his duty until such employee had been given disability retirement by the board, but this section authorizes the city to furnish the necessary care and attention to the injured employee pending his recovery or retirement within a year, and also provides that any money so paid out by the city on account of such injury or subsequent death, may be deducted by the city in the event of an award by the Industrial Accident Commission. ■ This section is not a pension statute, and no authority is given therein to the retirement board to deduct anything from an award against the city for an industrial death. In fact no reference to the pension board is found in the section except to exclude the board from acting until the injured employee is retired.

In brief, section 172 of the charter provides a system of benefits for employees of the city who have been injured. This in effect is a compensataion plan rather than a pension system, and as pointed out by Campbell, Workmen's Compensation, volume 2, section 1559, at page 1292, each of such systems is based upon a different theory and are mutually exclusive, payment under one not constituting a deductible credit upon the other, unless such an intent is clearly apparent.

To the same effect is a statement in *McNamara* v. *Industrial Acc. Com.*, 130 Cal. App. 284 [20 Pac. (2d) 53].

Section 173 seems to more clearly cover the factual situation here existing. That portion particularly pertinent hereto reads as follows:

"Section 173. Persons who shall be in the employ of the city on the effective date hereof shall become members of the Retirement System on that date, subject only to the fol-

lowing provisions in addition to the provisions contained in Sections 167 to 172, both inclusive, of this Charter. . . .

"(e) The Retirement Board shall provide as follows for the family of any member of the Retirement System who may die as the result of injuries received in the performance of duty:

"(1) Should the decedent leave a widow, she shall, as long as she remains unmarried, be paid an allowance equal to one-half of the monthly salary paid the decedent at the time of his death. . . . "

■ Such language clearly grants to the wife of a member of the retirement system a definite allowance, and unless there can be found a power giving the right to make a deduction, then such a reduction cannot be made. No such provision has been pointed out to us. Where a widow is granted a definite and unqualified pension, then, "upon the happening of the contingency the right to a pension becomes vested and may not be impaired by subsequent action of the legislature, or other authority". (20 Cal. Jur. 998; *Sheehan* v. *Board of Police Commissioners,* 47 Cal. App. 29 [190 Pac. 51]; *Klench* v. *Board, etc.,* 70 Cal. App. 171 [249 Pac. 46]; *O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366].)

In *Hurley* v. *Sykes,* 69 Cal. App. 310 [231 Pac. 748], the question presented was as to whether petitioner was a "member" of the fire department and entitled to the benefits of the fireman's relief fund. It was contended petitioner was simply an employee, a blacksmith's helper, and not a "member" of the department within the meaning of the charter which provided for the fireman's relief fund.

At page 316 of the opinion, the court said:

"In ascertaining the intent and meaning of the Charter provision a liberal construction should be indulged in to carry out the beneficial purposes aimed at. The spirit of these provisions is to protect all members of the fire department in the benefits which the fund insures, and they should not be narrowed by any strict or technical construction but should be interpreted on broad principles."

Although the Hurley case, *supra,* was concerned with the question as to whether the petitioner therein could be deemed to be an included individual within the meaning of the charter, and had a right in any event to protection of the provisions, and although we are not confronted with

such a question in the present case, nevertheless the same principle arises in the construction of section 172, which if construed as contended for by respondent, would result in precluding the employee's widow and minor child from receiving benefits under the pension system. The same principle of liberal construction as followed in the Henley case, *supra,* should be here applied.

In the case of *Foster* v. *Pension Board,* 23 Cal. App. (2d) 550 [73 Pac. (2d) 631], upon which respondents here strongly rely, the petitioner therein, a lieutenant in the fire department, was retired because of disability regardless of his length of time of service. The retirement provisions in such a case provided for monthly pensions in an amount equal to one-half the monthly salary, subject to certain limitations expressed in the ordinance in question. The limitations in section 3 (d) expressly stated as follows:

"The monthly pensions payable under this ordinance shall not be additional to any monthly compensation insurance payable to any member of the police or fire department in case of accident resulting in the course of his employment, unless the compensation payments are less than one-half ($\frac{1}{2}$) of the salary of the member. . . . "

" . . . The amount of such compensation and the amount of pension allowed by the Board shall not in any event, exceed one-half ($\frac{1}{2}$) of the member's salary at the time of his injury."

Petitioner contended that he was entitled to receive from the pension board an amount equal to one-half the monthly salary he had received, even though he had already received payments from the city's insurance carrier as compensation insurance.

The court held that petitioner was not so entitled and that even though the pension ordinance was loosely drawn and ambiguous that the clause, "The amount of such compensation and the amount of pension allowed by the Board shall not *in any event,* exceed one-half of the member's salary at the time of the injury," was entirely clear and controlling as to the rights of petitioner.

It will be noted, however, as stated by the court, that the title of the ordinance in question in that case, and the various provisions thereof, clearly showed that it was a pension ordinance and that the provisions in question referred

to under section 3 (d) thereof contemplated apportionment of payments where a member had received injury or become disabled.

Assuming that section 172 of the Sacramento Charter entitled "Injury in Performance of Duty", and commencing with "any City Employee", embraces employees who are within the pension or retirement system, nevertheless there remains the question as to whether section 172 was intended to include individuals who have died in the performance of duty but who have not received injuries for which they have been treated. Petitioner herein died immediately or within a very short time after a heart attack.

Assuming that the husband of petitioner, who was at the time of his death a member of the retirement system, was intended to be included within "Any City employee", nevertheless section 172 makes provision only for city employees who became physically disabled through bodily injury received in the performance of duty. Provision is made in such case for treatment and care by the city. It is provided the employee receive full pay during the disability or until retired, but not to exceed one year. It is then provided that allowances paid through contributions of the city be-. cause of the death or retirement of the employee shall be reduced by the amount of any benefits payable to or on account of such person, under the Workmen's Compensation Insurance and Safety Laws of the State. However, the wording is as follows: "That portion of any allowance payable because of the death or retirement of any *such* employee . . . shall be reduced, . . . " Clearly, *any such employee,* refers only to, *"Any city employee who shall become physically disabled by reason of any bodily injury received in the performance of his duty, . . . "*

No mention is made nor any provision expressed for a reduction of allowance in the case of the death of an employee in the performance of duty. The provision for "physical disability" can hardly be construed to cover the death of an employee during the performance of duty. The section mentions "retirement", but once again it provides for retirement of the *"injured employee".*

The right of petitioner to recover benefits independent of any right of deduction on the part of the City of Sacramento

is predicated upon the benefits granted under sub-section (e) of section 173 of the charter of the City of Sacramento.

Decedent having left a widow and a minor child living, it is apparent that the widow comes within the provisions of subtitle (1) of subsection (e), and the decedent having died as a result of injuries received in the performance of his duties, no question can be raised as to the right of the widow to receive the benefits provided under this section.

Section 173 makes no provision for allowances or deductions under subsection (e) or under any other subsection, in the event of the death of the employee through injuries received in the performance of duty. No mention is made in section 173 of any benefits payable under the Workmen's Compensation Insurance and Safety Law. Section 173 appears to be an independent section setting up the provisions and benefits under the "Retirement System", and not subject to the provisions of other sections of the charter except as to the limited extent as provided for under the first paragraph of section 173. This paragraph states that members of the retirement system are subject to the provisions contained in sections 167 to 172. However, the only section which purports to affect the claim of a recovery under section 173 is section 172, and as stated, we cannot construe section 172 as giving the City of Sacramento or the retirement board the power to deduct the allowance to which petitioner is entitled under subsection (e) of section 173, which makes the specific provision for the benefit of a widow in the event of death in the performance of duty. Petitioner is entitled to this benefit independent of the award made by the Workmen's Compensation Insurance, and independent of any limitations affecting employees under the provisions of section 172.

Any right of deduction applying to members under the retirement system, intended to be effective under circumstances such as presented in this suit, should have been clearly and specifically set forth under section 173 or specifically included in some other section, the terms of which clearly gave such right of deduction. Section 172 is not only ambiguous and doubtful as to its application to petitioner but it would be a strained construction if held to give a right of reduction on the part of the city.

It has been very definitely established in *City of Sacramento* v. *Industrial Acc. Com.*, 74 Cal. App. 386 [240

Pac. 792], that a city can by no act abridge the right of its employees and their dependents to compensation under the compensation laws, even though the city maintains a pension system of its own.

Even if it be conceded that the board had the power to deduct the industrial award from the widow's pension, only one-half of the award could be affected, for one-half of the award goes to the minor child (Sec. 4703, Labor Code) and the death allowance under the charter is solely to the wife. But we need not go into this phase of the matter, for in view of the plain provisions of section 173, *supra,* and in the absence in the charter of any power in the board to make any reduction because of the industrial award, the widow has a vested right to a pension of $100 a month from the date of the death of her husband until she dies or remarries.

Let the writ issue.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1941.