[Civ. No. 19506. Second Dist., Div. Two. May 5, 1953.]

O. M. THURSTON, Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellants.

S. V. O. Prichard for Respondent.

FOX, J.—Petitioner was an employee of Los Angeles County from January 10, 1921, to December 1, 1951. He was in the Department of the Forester and Firewarden, and was a member of the Foresters, Firewardens and Firemen's Retirement System. (Gov. Code, tit. 3, div. 4, pt. 3, ch. 5 [§ 32200 et seq.] known as the County Fire Service Retirement Law.) Petitioner's 60th birthday occurred on November 1, 1951, and, pursuant to section 32350 of the Government Code, he was involuntarily retired on December 1, 1951. He made all contributions which were required of him by that system so that he became entitled to a pension thereunder. His terminal salary, which was the average salary earned during the last three years of his service was $543.72 a month. His pension was 50 per cent of this amount or $271.86 per month.

Prior to 1952 there were in addition to the County Fire Service Retirement Law, two other separate retirement systems for county and certain other public employees. One was the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.) which covered county employees in

general. The other was the County Peace Officers' Retirement Law (Gov. Code, tit. 3, div. 4, pt. 3, ch. 4, § 31900 et seq.]), which governed the system for deputy sheriffs, deputy marshals and other employees in the police classification. Separate systems were maintained in the police and fire classifications so that greater benefits could be provided employees in these hazardous occupations than for those in sedentary work.

In order to obtain the practical administrative advantages of one retirement system instead of three, and at the same time recognize the differences between the hazards of police and fire work and ordinary sedentary employment, the County Employees Retirement Law of 1937 was amended by the statutes of 1951, chapter 1098, page 2843, to create a separate class of members known as "Safety Members" covering those in police and fire services. This statute went into effect on September 22, 1951. The new law authorized the board of supervisors to abolish the retirement system for those in the police and fire departments effective January 1, 1952. An ordinance for that purpose was adopted by the board on September 4, 1951. It went into effect on October 5, 1951, but by its terms it did not "become operative" until January 1, 1952.

To take care of those employees who were members of either of the abolished systems, chapter 1098, *supra,* added section 31558 to the Government Code. It provides in part that "[a]ll existing members of a pension system established pursuant to . . . Chapter 5 [County Fire Service Retirement Law] . . . who, on or before December 31, 1951, elect by written notice filed with the board to become safety members, shall become safety members on January 1, 1952, . . ."

On October 26, 1951, while still in the active service of the county, petitioner filed with the retirement board his election in writing to become a safety member of the Los Angeles County Employees Retirement System on January 1, 1952. With his written notice of election, petitioner tendered the board of retirement the sum of $1,642.44, which represented the amount he would be required to deposit under section 31664.3 of the Government Code in the event he was eligible for such membership. That money is still on deposit with the treasurer of the retirement system pending the final outcome of this case.

The trial court found, on stipulated facts, that petitioner "became a safety member" of such retirement system and

"is entitled to receive a pension of $353.42 per month, commencing" on January 1, 1952. Defendants appeal from the ensuing judgment.

 The requisite steps for transfer from the old retirement systems to the new or consolidated system are enumerated in section 31558 of the Government Code. The first requisite is that the person be an "existing" member of a pension system established pursuant to chapter 4 or chapter 5. Petitioner met this requirement because he was a member of the retirement system under the latter chapter. The second requirement is that such "existing" member "on or before December 31, 1951, elects by written notice filed with the board to become [a] safety" member.* Petitioner meticulously followed this procedure. The section then says that those who meet these requirements "shall become safety members on January 1, 1952." Having thus met all of the specified requirements, petitioner, by the express language of the section, was a safety member on January 1, 1952. This, however, was simply the date upon which the consolidated system became operative. On this point *Ross* v. *Board of Retirement*, 92 Cal.App.2d 188 [206 P.2d 903], is pertinent. In that case it appears that Alameda County adopted a retirement system so that the ordinance was effective on November 20, 1947, but not operative until January 1, 1948. In holding that the earlier date was the crucial one and petitioner therefore entitled to certain retirement benefits, the court pointed out that "the operative date is merely a date of convenience to the officers in charge of the retirement system. . . . Otherwise the operative date is a false factor. . . ." (P. 193.) That is true in this case. Petitioner's rights as a safety member in the new system became vested upon his compliance with the requirements of the new law, though benefits therefrom were deferred until the operative date of the new system. To facilitate the taking over of the old system and fitting it into the new, January 1, 1952, was chosen as a logical and convenient operative date.

 Defendants insist that the designation "existing members" appearing in Government Code, section 31558, "means those who are members on January 1, 1952" and "those still

---

*" 'Safety member' means any person who is either:
"(a) A member of a pension system established pursuant to either Chapter 4 or Chapter 5, who, on or before December 31, 1951, elects by written notice filed with the board, to become a safety member, . . ."
(Gov. Code, § 31469.3.)

employed'' on that date. The answer to these contentions is that the statute does not so state.

On the question of membership the section makes it unmistakably clear that it is membership in ''a pension system established pursuant to either Chapter 4 or Chapter 5'' that is crucial. It so states in simple language. Furthermore, such member, on or before December 31, 1951, must *elect* by filing written notice with the board to become a safety member on January 1, 1952. It is thus plain that in order to \make the transition from the old to the new retirement system the members of the former must take action while it is still alive, for it expired with the end of the year. This is emphasized not alone by the fact that December 31, 1951, is the latest date on which necessary action to transfer can be taken by a member but also by the present tense of the verb ''elect.'' To follow defendants' argument would mean that the life of the old system, which by the terms of the county ordinance expired with the end of the year, would somehow be carried over into the beginning of the next year. It would also mean that the present tense of the verb ''elect'' would be changed to past tense. The section would then say that all existing members . . . who, on or before December 31, 1951, *have elected* . . . shall become safety members on January 1, 1952. Such a construction would be an obvious distortion of the plain language of the section. ■ Pension rights ''may not be denied by a strained judicial construction.'' (*Holt* v. *Board of Police Etc. Comrs.*, 86 Cal.App.2d 714, 716 [196 P.2d 94]; *Larson* v. *Board of Police & Fire Comrs.*, 71 Cal. App.2d 60, 63 [162 P.2d 33].)

To accept defendants' argument that to be eligible for benefits under the new law the member must still have been employed on January 1, 1952, is to add a condition for such eligibility that is not set forth in the act. If such condition or limitation had been intended it would have been a very simple matter for the Legislature to so state. The absence of such a statement is indeed significant.

The practical effect of both of defendants' arguments is to place additional limitations on the eligibility of a member of the old retirement system to receive safety member benefits under the consolidated setup. ■ This is counter to ''the well-recognized rule that all pension laws are liberally construed to carry out their beneficent policy.'' (*England* v. *City of Long Beach*, 27 Cal.2d 343, 346-347 [163 P.2d 865]; *Knight* v. *Board Etc. Employees' Retirement*, 32 Cal.2d 400,

402 [196 P.2d 547, 5 A.L.R.2d 410]), and emphatically militates against defendants' contentions.

Defendants seek to fortify their theory of the case by raising certain hypothetical situations and by reference to a number of other sections of chapter 1098 which they claim point in the direction of their ultimate conclusion. In view however, of the vulnerability of their basic position it is not necessary, nor would it be profitable, to analyze these theoretical and collateral arguments. Suffice it to say that if the extreme hypothetical situations postulated by defendants were actually to arise, the courts would no doubt be able to dispose of them on their intrinsic merits in conformity with the mandate of the statute and settled legal principles without necessarily producing the incongruous results which defendants fear.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.