310

DORA C. RICHMOND, Appellant, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Morgan V. Spicer and H. R. Whiting for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, for Respondents.

DOOLING, J.—This is an appeal from a judgment of the Superior Court in and for the City and County of San Francisco denying petitioner-appellant Dora C. Richmond's peti-

tion for writ of mandate. By the petition appellant was afforded review of a final administrative decision of the Unemployment Insurance Appeals Board that she did not have a valid claim for benefits under the California Unemployment Insurance Act.

Appellant was employed in San Francisco for a 10-year period until January 19, 1951, when her employment was terminated. On January 22, 1951, appellant registered for work and filed a claim for benefits with the Department of Employment. Before any benefits were paid under this claim she again became employed. April 10, 1951, she left this employment because of ill health. On April 11, 1951, appellant filed a claim for unemployment insurance disability benefits and received such benefits through October 16, 1951. On October 30, 1951, she reopened her claim for unemployment insurance benefits (filed January 22, 1951) and received these benefits through January 21, 1952. Appellant filed a new claim for unemployment insurance benefits on January 22, 1952. It is the denial of the January 22, 1952 claim that is here in dispute.

The trial court concluded that appellant had not been paid sufficient wages within the 12-month period following the filing of her first claim on January 22, 1951, to entitle her to receive further benefits. This conclusion was based upon sections 52.6 and 53, subdivision (a) of the Unemployment Insurance Act (now substantially reenacted as Unempl. Ins. Code, §§ 1277 and 1281, subd. (a)).

Certain other provisions of the Unemployment Insurance Act as they affected appellant's claims must be discussed in order to understand the precise problem involved. Section 6, subdivision (r) of the act (now Unempl. Ins. Code, § 1275) provided that unemployment benefits shall be based on wages paid in the "base period." It defined "base period" for benefit years beginning in November, December, and January as "the four calendar quarters ended in the next preceding month of June." Section 6, subdivision (q) (now Unempl. Ins. Code, § 1276) defined "benefit year" as "the one-year period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits."

Since appellant filed her first claim on January 22, 1951, her "benefit year" on that claim began in January, 1951, and under the terms of section 6, subdivision (r), the "base period" for the calculation of her benefits was the four calen-

dar quarters ending June 30, 1950. So when she filed her second claim on January 22, 1952, the "base period" for that claim would be the four calendar quarters running from July 1, 1950, to June 30, 1951. Appellant's wages in that period totaled $2,145.50 and were distributed as follows:

| | | |
|---|---|---|
| $780.10 | ................. | July-Sept., 1950 |
| 711.90 | ................. | Oct.-Dec., 1950 |
| 192.00 | ................. | To Jan. 22, 1951 |
| 415.35 | ............ | Jan. 22-March, 1951 |
| 46.15 | ................ | April-June, 1951 |

It is the proper application of sections 53, subdivision (a), and 52.6 to these wages which is crucial in this case. Section 53, subdivision (a), provided:

"An individual cannot establish a valid claim or a benefit year during which any benefits are payable unless he has during his base year been paid wages for employment by employers of not less than three hundred dollars ($300); provided, however, that if more than 75 percent of his base-period wages were paid during a single calendar quarter, he shall not be eligible for benefits unless his total wages during the base period are not less than thirty times his weekly benefit amount." Appellant's record of earnings above set out meets the requirements of this section. During the "base period" July 1, 1950, to June 30, 1951, she was paid wages of not less than $300 and not more than 75 per cent of such wages were paid during any calendar quarter.

However in 1951 the Legislature added section 52.6 to the act (Stats. 1951, pp. 4189-4190). This section became effective on September 22, 1951, and the portion of it pertinent to this case reads: "On and after January 1, 1952, any wages paid prior to the filing of a valid claim and not used in the computation of the award may be used for the purpose of computing the amount of any other award only if within the 12-month period following the date of the filing of said valid claim the individual was paid sufficient wages to meet the eligibility requirements of Section 53 of this act."

Since appellant was unemployed after April, 1951, her wages "within the 12-month period following the date" of filing her valid claim of January 22, 1951, encompassed the following items:

| | | |
|---|---|---|
| $415.35 | ............ | Jan. 22-March, 1951 |
| 46.15 | ............... | April-June, 1951 |

It is obvious that more than 75 per cent of her earnings within the 12-month period following the date of filing her first

claim fell in one quarter: January-March, 1951. It is also true that her total wages during this period were less than 30 times what her weekly benefit amount would be. From this the appeals board and the trial court concluded that she did not receive "sufficient wages" within the 12-month period following the date of the filing of her January 22, 1951, claim "to meet the eligibility requirements of section 53 (a)" of the act.

We have concluded that section 52.6 compels this finding. The plain meaning of its language is that to be entitled to use the wages paid to her before January 22, 1951, and not used in computing her previous benefits her wages in the year following the filing of her first claim must measure up to the requirements of section 53, subdivision (a). This they did not do since, as we have noted, over 75 per cent of such wages fell in one quarter of that year and the aggregate of all such wages did not equal 30 times her weekly benefit amount.

Appellant attempts an argument that the $300 provision of section 53, subdivision (a), is a quantitative requirement and the later proviso of 75 per cent in one quarter, etc., is a qualitative one, or in the alternative that the 75 per cent in one quarter, etc., is a condition subsequent to the $300 requirement. The fact is, however, that section 53, subdivision (a), has two separate requirements, one that the applicant's total wages must amount to at least $300 and the second that if 75 per cent of the wages were received in one quarter the total of such wages must be not less than 30 times the weekly benefit amount. Applying these requirements to her wages received after January 22, 1951, as provided by section 52.6, such wages meet the first requirement for eligibility but they fail to meet the second one.

Appellant also argues, citing *Kavanagh* v. *Board of Police Pension Fund Comrs.*, 134 Cal. 50 [66 P. 36] (a pension case), that appellant had a vested right in her retirement benefits which could not be changed to her detriment by the enactment of section 52.6. Section 52.6 was not made retroactive. It became effective in September, 1951, but by its own terms it only applied "on and after January 1, 1952." Whether the doctrine of vested rights applies to unemployment benefits in the same sense in which it applies to pension rights has not been decided in any case called to our attention (*cf.* cases in the note in 20 A.L.R.2d 963, 964).

In any event it is recognized in the pension cases that

before the contingency happens upon which the right to receive the pension depends ''the terms . . . may be altered within reason without an impairment of the contract.'' (*Terry* v. *City of Berkeley*, 41 Cal.2d 698, 702 [263 P.2d 833] and cases cited.) ■ Here the contingency of appellant's being unemployed on January 22, 1952, was the essential one and it occurred several months after the effective date of section 52.6.

Whatever hardship may exist in the particular case the problem is a legislative and not a judicial one.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied August 10, 1955, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1955.