[Civ. No. 12096. Fourth Dist., Div. Two. Feb. 22, 1973.]

CITY OF COSTA MESA, Plaintiff and Appellant, v.
ARTHUR R. McKENZIE, Defendant and Respondent.

## COUNSEL

Roy E. June, City Attorney, and Ellis J. Horvitz for Plaintiff and Appellant.

Barnes, Schag, Johnson & Kennedy and William S. Hunter for Defendant and Respondent.

## OPINION

TAMURA, J.—This is an action for declaratory relief by the City of Costa Mesa against defendant McKenzie, a retired city employee, for a judicial declaration respecting the city's obligation to pay a disability retirement allowance under city Ordinance No. 64-45. The case was tried on an agreed statement of facts and resulted in a judgment decreeing that McKenzie is entitled to monthly disability benefits under the ordinance in the amount of $1,109 in addition to $664.51 per month under the city's retirement plan and $227.50 per month in workmen's compensation benefits for a total sum of $2,001.01 per month. The city appeals from the judgment.

The facts are as follows:

Nine years after its incorporation in 1953 as a general law city, Costa Mesa through its city council created an actuarially sound retirement plan for city employees pursuant to Government Code sections 45341-45345.[1]

As adopted, the plan only provided for retirement benefits based upon length of service and a specified retirement age. It covered only those employees who volunteered to contribute 7 percent to 10 percent of their monthly wages. Under the plan the monthly benefit was, and remains 1½ percent of the final average salary[2] for each year of service prior to the adoption of the plan and 2 percent for each year of service thereafter.

---

[1]Government Code sections 45341-45345 read as follows:

"45341. The legislative body may establish a pension plan and provide retirement and death benefits for city employees in order to effect economy and efficiency in the public service and provide a means by which employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees.

"45342. Any pension or retirement system adopted shall be on a sound actuarial basis and provide for contributions by both the city and the employee members of the system which shall be based on percentages of pay roll to be changed only by adjustments on account of experience under the system.

"45343. Contributions shall be in amounts which will accumulate at retirement a fund sufficient to carry out the promise to pay benefits to the individual on account of his service as a member of the system, without further contributions from any source.

"45344. Benefits based on service rendered prior to membership in the system shall be met by additional contributions of the employer. Such prior service liability may be funded over a fixed period of years.

"45345. As an alternate method of providing a retirement system, the city may contract with the Board of Administration of the State Employees' Retirement System and enter all or any portion of its employees under such system pursuant to law and under the terms and conditions of such contract."

[2]"Final Average Salary" is the average salary of the employee durng the three years preceding retirement or the average during any five consecutive years, whichever is higher.

A year later the plan was amended by the addition of a provision for retirement for disability whether work related or otherwise. Monthly benefits under the disability retirement provision were the same as for service retirement except that the salary in effect on the date of disability is used in computing benefits instead of the final average salary. Participation in this portion of the plan was only available to present members of the plan and to future members after five years membership. Only about 100 of the city's 300 employees were covered by the disability provision.

Sometime prior to September 1964 a Newport Beach police officer was killed in the course of his employment and much publicity was given to the financial plight of his widow and children who suffered because of an alleged lack of adequate benefits. Numerous City of Costa Mesa employees informed the defendant, who at the time was city director of public safety, of their concern about the adequacy of benefits payable in the event of death or disability incurred in the course of employment and expressed their belief that disability benefits in such circumstances should be as close as possible to the current take-home pay of the employee at the date of disability or retirement. Defendant recommended to the city manager that Costa Mesa adopt a disability plan to bring about the payment of such benefits to its employees.

Thereafter the city council enacted Ordinance No. 64-45 which provides in relevant part: "On and after September 21, 1964, in all cases where sickness, injury or death is incurred in the performance of duty, full time employees shall be entitled to the following benefits beyond the periods provided for in Sections 2730 through 2735 [of the Municipal Code of Costa Mesa] hereof: [¶] (a) Injury on Duty—Disability. A monthly allowance will be paid if a disability is determined by the Injury on Duty Accident Committee and the City Physician to be incurred in the performance of duty. The allowance shall be fifty per cent (50%) of the employee's final compensation (based on current monthly salary). This allowance shall continue during the lifetime of the employee, or until it has been determined by the Injury on Duty Accident Committee and the City Physician that the employee is physically able to return to duty. [¶] (b) Injury on Duty—Death. A monthly allowance will be paid to the widow, or if there is no widow, to the employee's children under the age of 18. Such sum shall be paid until the youngest surviving child reaches 18 years of age. If death is determined by the Injury on Duty Accident Committee and the City Physician to have arisen out of an injury or disability incurred in the performance of duty, the allowance shall be fifty per cent (50%) of the employee's final compensation (based on his current monthly salary), and is payable to his widow until death or remarriage. In the event of death or remarriage of the widow, the

allowance will be paid to the surviving children. [¶] Section 2. This Ordinance is hereby declared to be an urgency ordinance immediately necessary for the preservation of the public welfare and shall become effective upon its adoption. The facts constituting the urgency are as follows: More than two hundred employees of the City are without protection in the event of injury or death in the performance of duty."

Two years after enactment of the ordinance, the defendant (who by now was city manager) upon being informed that the city's potential liability under the ordinance was unfunded, commissioned an actuarial study to recommend a method of adequate funding. The result of the study was a recommendation that the injury section of the ordinance be funded by long term disability insurance coverage. Pursuant to the recommendation, the city authorized Prudential Insurance Company to prepare a master contract for insurance coverage of the disability section of the ordinance, and in November 1967 the policy was issued. By its terms the policy provides that a scheduled benefit of 65 percent of the employee's monthly earnings up to a maximum of $1,000 will be paid monthly for life in the case of disability and to age 65 for sickness,[3] and that Prudential may take certain offsetting credits against any payment under the policy for other benefits paid by the city to the employee by reason of his disability. On the basis of salary levels and the fact that only one-third of its 300 employees participated in the retirement plan, the city calculated that at the time of initial funding defendant was the only city employee who could have a disability claim under Ordinance No. 64-45 for an amount larger than the maximum benefit of $1,000 payable under the policy.[4] The city determined to self-insure its liability under the death benefits section of Ordinance No. 64-45, allocating a sufficient amount of its own money to provide adequate funding.

On March 1, 1970, after 17 years of employment with the city, the defendant suffered a stroke, and was advised by his doctor not to return to work. The city determined that he was totally disabled and that the disability was incurred in the line of duty.

---

[3]It is not clear from the record what percentage of final salary is actually paid to a disabled employee—50 percent under Ordinance No. 64-45 or 65 percent under the policy. The city fails to mention the discrepancy. McKenzie urges the additional 15 percent payable under the policy was possibly included so that the net amount due an employee under the policy (after deductions were taken for benefits under the retirement plan) would be close to the 50 percent of salary payable under Ordinance No. 64-45. Considering, however, that relatively few city employees were members of the retirement plan and that even fewer were entitled to benefits thereunder of 15 percent, a flat payment of 65 percent of salary to *all* employees is an expensive and highly inexact means of bringing about such a result.

[4]It was stipulated by the parties that due to salary increases since 1967, eight city employees might now have claims under the ordinance exceeding the policy limits.

Defendant contended that he was entitled to (1) $664.51 per month under the retirement plan, (2) $1,109 per month under Ordinance No. 64-45, and (3) $227.50 per month under workmen's compensation for a total of $2,001.01 per month. The city contended that defendant is entitled to total benefits of not more than $1,000 per month allocated as follows: Monthly benefits of $664.51 under the retirement plan, $227.50 per month in workmen's compensation benefits, and $107.99 under Prudential's policy. The $107.99 is computed by subtracting from Prudential's maximum liability of $1,000 the $664.51 payable under the retirement plan and the $227.50 workmen's compensation benefits.

There exists a retirement trust fund accumulated by contributions under the retirement plan sufficient to pay all claims of the defendant. However, it was stipulated that based upon actuarial assumptions underlying the plan, payment out of the fund of benefits not provided for in the plan, such as benefits under the ordinance, would impair the adequacy of the fund to finance benefits under the plan.

The trial court decreed that the city was obligated to pay retirement and disability benefits in the sum of $1,773.51 per month ($664.51 under the retirement plan and $1,109 under Ordinance No. 64-45) without any offset for workmen's compensation benefits, resulting in total benefits of $2,001.01 per month.

On appeal the city contends that Ordinance No. 64-45 was not intended to provide for disability benefits *in addition* to benefits under the retirement plan and workmen's compensation benefits but to assure minimum long term disability benefits equal to 50 percent of the employee's compensation during his disability. It is urged that the interpretation placed upon Ordinance No. 64-45 by the court as reflected by the decree would render the retirement plan actuarially unsound and violative of Government Code sections 45342 and 45343. It is further urged that the construction placed upon the ordinance by the trial court could result in an employee recovering greater benefits for disability retirement than the compensation he would have received had he kept working.

I

Fundamentally, our objective in this case is to ascertain the intention of the city council in enacting Ordinance No. 64-45, a task made difficult by the patchwork character of the city's retirement scheme. We are guided in our efforts, however, by several basic rules of statutory interpretation. First, "[t]he fundamental rule of statutory construction is that the

court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672]; *People* v. *Superior Court,* 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) ▪ Secondly, " '[s]tatutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity.' [Citation.] ▪ '[I]n construing a statute the courts may consider the consequences that might flow from a particular interpretation. They will construe the statute with a view to promoting rather than to defeating its general purpose and the policy behind it.' " (*Anaheim Union Water Co.* v. *Franchise Tax Bd.,* 26 Cal.App.3d 95, 105 [102 Cal.Rptr. 692]; *Bush* v. *Bright,* 264 Cal.App.2d 788, 792 [71 Cal.Rptr. 123].) Finally, there is a presumption that the Legislature does not intend to enact legislation in contravention of existing public policy. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 152 [23 Cal.Rptr. 592, 373 P.2d 640].)

▪ The application of these rules leads to the conclusion that by enacting Ordinance No. 64-45 the Costa Mesa City Council did not intend a disabled city employee to receive maximum benefits under the ordinance in addition to disability benefits under the city's retirement plan but rather only intended to provide that any employee whose disability was incurred in the performance of duty would receive city paid disability benefits equal to but not more than 50 percent of his salary. This interpretation comports with both the historical background of the ordinance and common sense.

It appears from the agreed statement of facts that Ordinance No. 64-45 was enacted to arrest the fear of city employees that in the event they became disabled or died in the line of duty their families would be left without an adequate source of income. It is reasonable to assume that the disability benefits provided by Ordinance No. 64-45 in the amount of 50 percent of final salary and the generous monthly allowance of 50 percent of final salary to the survivors in the event of death were sufficient to allay that fear. Even defendant, who concedes that employees who are not retirement plan members would be entitled only to that amount in the event of disability incurred in the line of duty nowhere attacks the sum as inadequate.

Defendant urges that since employees requested disability benefits as nearly equal to take home pay as possible and since defendant proposed to the council that it enact a plan to provide for such benefits we must assume the council acted accordingly. As the city correctly points out, however, it

is the intent of the city council and not the intent of the city's employees or its then director of public safety that is controlling.

Concededly, cumulative benefits for those disabled employees who were also retirement plan members would provide a greater income to the employee and his family. However, cumulating the retirement plan and ordinance disability benefits would result in several consequences which the city council could not have intended. For example, under the interpretation urged by the defendant an employee who had worked for the city and been a member of its retirement plan for 30 years and who retired by reason of work-connected disability would be entitled to 60 percent of his final salary under the retirement plan and an additional sum equal to 50 percent of his final salary under Ordinance No. 64-45. The employee would thus receive disability retirement benefits greater than his salary while employed. ■ The purpose of disability benefits, however, is to "minimize the total economic loss to the employer, the employee or the public, by restoring [the employee] to productive life quickly through prompt medical treatment *and the incentive to return to service.*" (*City etc. of San Francisco* v. *Workmen's Comp. App. Bd.*, 2 Cal.3d 1001, 1012 [88 Cal.Rptr. 371, 472 P.2d 459].) (Italics supplied.) ■ That purpose would be frustrated if the employee's disability benefits were greater than the salary he would have received while working.

Defendant argues that when the ordinance was enacted the maximum disability benefit payable to one who would have then been compelled to retire for disability under the retirement plan would have been 17½ percent which when combined with the 50 percent payable under the ordinance to an employee disabled in the line of duty would have yielded a maximum benefit of 67½ percent of final salary and thus there was then no danger any employee would receive more while disabled than when employed. We cannot attribute such shortsightedness to the city council. It would have been readily apparent that under defendant's interpretation of the ordinance benefits payable in the case of a work-related disability would have drastically increased in a matter of a few years.

Defendant's interpretation of the ordinance would also give rise to the anomaly of a short term employee retiring for on the job disability receiving a larger income than a long term employee who retired for service. A new employee could join the city's retirement plan and after five years enjoy eligibility for disability retirement under the plan. If immediately thereafter he becomes disabled while in the performance of duty, he would receive 10 percent of his final salary under the plan in addition to 50 percent of his final salary under Ordinance No. 64-45. However, in order for an employee to

receive an equivalent retirement for service, he would have to work for the city for at least 30 years.[5] It is inconceivable that the city council intended such a disparity.

Finally, should the defendant's interpretation of Ordinance No. 64-45 prevail, the city's retirement plan could be rendered actuarially unsound. Government Code section 45342[6] requires that any pension or retirement system be on a sound actuarial basis. ■ To be actuarially sound a retirement plan should take into consideration such factors as age at time of entry into service, salary, experience and life expectancy. (48 Ops.Cal.Atty. Gen. 124, 128.) ■ Although it is apparent from the agreed statement of facts that those factors were considered when Costa Mesa established its retirement plan, there is no showing that actuarial factors were taken into account when Ordinance No. 64-45 was passed. To the extent disability benefits payable under the ordinance are paid from the fund established to finance the retirement plan,[7] factors other than those taken into account when the fund was established will be involved. The interpretation advanced by defendant could render the fund inadequate to pay benefits under the plan.[8]

The trial judge determined that sections 45300-45345 of the Government Code provided only an "alternative procedure" for the establishment of a retirement system; that the disability plan provided by Ordinance No. 64-45 was not adopted under the Government Code sections; and that, therefore, it was not subject to section 45342's requirement of actuarial soundness. Government Code section 45316 relied upon by the trial judge provides: *"This article* [art. 1 of tit. 4, div. 5 of the code] provides an alternative procedure for the establishment of retirement systems in cities." (Italics supplied.) Government Code section 45342, however, is in *article 2* of title 4, division 5 of the Government Code and provides that: *"Any* pension or retirement

[5]Since its enactment in 1962 benefits payable under the city's retirement plan accumulate at the rate of 2 percent per year: 2% (x) = 60%/yr.; x = 30 yrs.

[6]Government Code section 45342 provides: "Any pension or retirement system adopted shall be on a sound actuarial basis and provide for contributions by both the city and the employee members of the system which shall be based on percentages of pay roll to be changed only by adjustments on account of experience under the system."

[7]We are not told what source would be used to pay excess benefits (those not covered by the Prudential policy) under Ordinance No. 64-45, however, since both parties urge the ordinance and the retirement plan be treated as a single retirement scheme, it is not unreasonable to assume they would be financed by the same source, namely, the retirement fund.

[8]It is apparent that even under our interpretation of Ordinance No. 64-45 not all of the benefits payable thereunder to defendant will be funded by the Prudential insurance policy. To the extent city is obligated to pay excess benefits such payment must come from a source other than the retirement fund.

system adopted shall be on a sound actuarial basis . . . ." (Italics supplied.) Thus a municipal retirement plan whether enacted under Government Code sections 45300-45345 or pursuant to "an alternative procedure" must be on a sound actuarial basis. Under defendant's interpretation of Ordinance No. 64-45, Costa Mesa's retirement scheme might not be.

Defendant urges, however, that the effect payment of benefits under Ordinance No. 64-45 would have upon the actuarial soundness of the retirement fund is irrelevant in that the city has the obligation to pay retirement benefits regardless of adequate funding, citing *Bellus* v. *City of Eureka*, 69 Cal.2d 336 [71 Cal.Rptr. 135, 444 P.2d 711]; *England* v. *City of Long Beach*, 27 Cal.2d 343 [163 P.2d 865]; and *Crowley* v. *Board of Supervisors*, 88 Cal.App.2d 988 [200 P.2d 107]. We are not persuaded. In *Bellus* and *England* there was no dispute about who was entitled to benefits under the particular municipal retirement system involved. The question was whether a municipality was obligated to pay pension benefits clearly owing from sources other than a retirement fund where the fund was inadequate. Both courts answered in the affirmative, largely on the basis that the pension plans there involved acted as an inducement for municipal officers to enter into and continue in the service of the city. As stated by the *Bellus* court: "[W]hen the ordinance establishing the pension plan can reasonably be construed to guarantee full payment *to those entitled to its benefits* regardless of the amount in the fund established by the pension plan, then 'we are, of course, required to construe the provisions liberally in favor of the applicant so as to carry out their beneficient policy.' [Citations.]" (Italics supplied.) (*Bellus* v. *City of Eureka, supra,* 69 Cal.2d 336, 351.) *Crowley, supra,* was a proceeding in mandamus to compel the County of Los Angeles to levy a property tax in order to make up a deficit in a police retirement fund. The court denied the writ although it did recognize that under the plan (which like the plans in *Bellus* and *England* left no doubt as to who would receive benefits) no retiring police officer should receive less than the full amount of his retirement allowance. While the three cases hold that pension benefits unequivocally granted must be paid regardless of the source of payment, they do not support the proposition that the actuarial soundness of a pension plan is irrelevant in ascertaining the extent of benefits intended to be provided where the pension ordinance is unclear. If Ordinance No. 64-45 were construed to provide disability benefits in addition to those payable under the retirement plan, the retirement fund would be actuarially unsound. It is not reasonable to assume that the city intended to establish an actuarially unsound retirement system contrary to the provisions of Government Code section 45342.

Defendant cites *City of Palo Alto* v. *Industrial Acc. Com.,* 232 Cal.App.

2d 305 [42 Cal.Rptr. 822]; *Thurston* v. *County of Los Angeles,* 117 Cal. App.2d 618 [256 P.2d 588]; *Holt* v. *Board of Police etc. Commrs.,* 86 Cal.App.2d 714 [196 P.2d 94]; *Larson* v. *Board of Police etc. Commrs.,* 71 Cal.App.2d 60 [162 P.2d 33]; and *Vero* v. *Sacramento City E.R. System,* 41 Cal.App.2d 482 [107 P.2d 82], and urges that limitations on municipal pension benefits, including the deduction of one benefit from another is impermissible unless such limitations are clearly expressed in the ordinance. Insofar as the contention refers to the obligation of the city to pay maximum cumulative benefits under both the retirement plan and Ordinance No. 64-45 it misses the mark. *Vero, Larson, Holt* and *City of Palo Alto* all dealt with the failure of a city to pay retirement benefits in addition to workmen's compensation benefits. While relevant to McKenzie's workmen's compensation award, discussed *infra,* the cases do not deal with a municipality's obligation to pay cumulative benefits under a municipal retirement scheme. *Thurston, supra,* simply dealt with the statutory right of an employee to transfer from one retirement plan to another; it did not involve overlapping payments.

Defendant also contends that the city's argument, if accepted, will discourage employees from participating in the retirement plan since they would have to contribute to the plan for 25 years in order to obtain the same disability benefits which would be immediately available without cost to the employee under Ordinance No. 64-45.

While Ordinance No. 64-45 does provide substantial disability benefits at no cost to the employee, we doubt this fact would significantly discourage participation in the retirement plan. Before disability benefits are payable under the ordinance, the city must find that the employee's illness, injury or death was incurred in the performance of duty. Under the plan, benefits are payable whether or not the illness, injury or death is work related. Under the plan a participating employee may retire for service after reaching a specified age; under the ordinance an employee or his family may not recover except for disability or death arising out of the employment.

Finally, McKenzie argues that the city's interpretation of Ordinance No. 64-45 would violate the vested rights of retirement plan participants since part of their contribution pays for disability benefits and under the city's interpretation those disability benefits would be offset against benefits paid under the ordinance. The argument is specious. Ordinance No. 64-45 was not designed to take away disability benefits accumulated under the retirement plan, but rather was intended to supplement them up to 50 percent of the employee's final salary. If the employee accumulated disability benefits under the plan in excess of 50 percent of final average salary, Ordinance No.

64-45 does not require him to surrender the excess nor does the city so contend. Rather, if the employee's disability benefits under the plan exceed 50 percent of his final salary, Ordinance No. 64-45 would simply be inoperative.

We conclude that in enacting Ordinance No. 64-45 the Costa Mesa City Council only intended to insure a total disability retirement benefit for an employee injured in the performance of duty of 50 percent of final salary.

## II

■ We turn to a consideration of the workmen's compensation benefits.

In its argument, the city never explicitly distinguishes workmen's compensation benefits from benefits payable under its retirement plan, but instead assumes that since double recoveries are abhorrent to the courts, so are triple recoveries, and if retirement plan benefits are to be deducted from benefits payable under Ordinance No. 64-45 so should workmen's compensation payments. The reasoning is erroneous.

■ Workmen's compensation and retirement programs are based upon entirely different considerations. (*Larson* v. *Board of Police etc. Commrs., supra,* 71 Cal.App.2d 60, 63-64.) The former is compulsory under state law and may not be subsidized by any contributions or exactions from employees while the latter is voluntary and subject to employee-employer contractual arrangements. (*City etc. of San Francisco* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 1001, 1010.) Where a retirement system grants a definite allowance, unless provision is expressly made for a *pro tanto* deduction for workmen's compensation benefits, such reduction cannot be made. (*Holt* v. *Board of Police etc. Commrs., supra,* 86 Cal.App.2d 714, 719-720; *Johnson* v. *Bd. of Police etc. Pen. Commrs.,* 74 Cal.App.2d 919, 921-922 [170 P.2d 48]; *Larson* v. *Board of Police etc. Commrs.,* 71 Cal.App.2d 60, 64 [162 P.2d 33]; *Vero* v. *Sacramento City E. R. System, supra,* 41 Cal.App.2d 482, 486; see *Stafford* v. *L. A. etc. Retirement Board,* 42 Cal.2d 795, 799-800 [270 P.2d 12].) ■ Since Ordinance No. 64-45 is devoid of any indication that workmen's compensation benefits are to be deducted from disability benefits payable under the ordinance, no such deduction is permissbile. *Herrera* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 254 [78 Cal. Rptr. 497, 455 P.2d 425]; *City of Los Angeles* v. *Industrial Acc. Com.,* 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d 801]; and *City etc. of S. F.* v. *Workmen's Comp. App. Bd.,* 267 Cal.App.2d 771 [73 Cal.Rptr. 429], cited by the city for the contrary position are distinguishable. Each involved either a city charter provision or Labor Code section which expressly precluded

recovery of both wage payments or retirement benefits and workmen's compensation benefits. *Evans* v. *Los Angeles Ry. Corp.*, 216 Cal. 495 [14 P.2d 752], also cited, did not involve the payment of workmen's compensation.

The city urges that the Prudential insurance policy used to fund Ordinance No. 64-45 should be treated as a contemporaneous administrative construction of the ordinance (*Rivera* v. *City of Fresno*, 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]), and therefore compel a different result. We disagree. Under the "offset provisions" section of the policy, Prudential is entitled to offset from its obligation "[p]eriodic benefits for loss of time on account of disability, under or by reason of—(3) any state, . . . or other Federal law of the United States . . ." While this indicates that Prudential may deduct workmen's compensation payments from *its* obligation under the policy, it in no way supports the proposition that the city may make a similar deduction from *its obligation* under Ordinance No. 64-45. The gist of city's argument is that since it intended to fully fund its obligation under Ordinance No. 64-45 through the Prudential policy, if the policy provides for an offset for workmen's compensation benefits the city council must have intended such an offset under the ordinance. We cannot agree. Even if the Prudential policy be deemed contemporaneous with the enactment of Ordinance No. 64-45,[9] plaintiff's argument must fail since the premise upon which it is based—that the policy was designed to insure against the city's potential liability under the ordinance—is erroneous. Under the policy benefits for an employee's total disability due to sickness are payable only to age 65, but under the ordinance the city is obligated to pay such benefits for life. Under the ordinance the city is obligated to pay 50 percent of the disabled employee's final salary whether or not the benefits exceed $1,000 but Prudential's obligation is limited to $1,000.

Nor are we so certain as plaintiff that simply authorizing purchase of an insurance policy constituted an administrative construction of the ordinance. In *Rivera* v. *City of Fresno, supra,* 6 Cal.3d 132, and the cases cited therein, the administrative constructions given great weight by the courts took the form of either continuous administrative applications of the statute or a declaration of policy to be followed in the administration of the statute. The Prudential insurance policy is neither a direct application of Ordinance No. 64-45 nor a statement of the city's policy. At best, it is a collateral agreement entered into three years later and its terms may have been largely dictated by the cost of premiums. To accept plaintiff's argument would permit the city to amend its pension ordinance by an insurance policy.

---

[9]The Prudential policy was issued three years after the enactment of Ordinance No. 64-45.

Finally, our conclusion that workmen's compensation payments and benefits payable under Ordinance No. 64-45 are cumulative is compatible with the considerations which supported the city's argument regarding the relationship of the retirement plan and the ordinance. Since workmen's compensation coverage must be entirely subsidized by tax moneys without direct or indirect contribution or exactions from employees (*City etc. of San Francisco* v. *Workmen's Comp. App. Bd., supra*, 2 Cal.3d 1001, 1010), payment of cumulative benefits will not jeopardize the actuarial stability of the retirement fund. Nor given the relatively modest size of workmen's compensation payments,[10] is it likely that long term employees such as the defendant will be able to retire on more than they earned while employed.

### Disposition

We conclude that the total disability benefits payable to defendant under the plan and the ordinance should equal but not exceed 50 percent of his final salary without any offset for workmen's compensation benefits.

The judgment is reversed with directions to enter judgment in accordance with this opinion.

Kerrigan, Acting P. J., and Gabbert, J., concurred.

---

[10]Labor Code section 4658 provides for a weekly benefit amount of 65 percent of the employee's average weekly earnings. Labor Code section 4453 provides that in cases of permanent disability, average weekly earnings shall be not more than $107.69.