[Civ. No. 18636. First Dist., Div. One. May 4, 1960.]

LESTER A. O'BRIEN, Appellant, v. CITY OF SAN JOSE et al., Respondents.

Foley & Foley and James W. Foley for Appellant.

Ferdinand P. Palla, City Attorney, Richard K. Karren, Harry Kevorkian and Franklin T. Laskin, Assistant City Attorneys, for Respondents.

DUNIWAY, J.—Appeal from a judgment denying a writ of mandate. Petitioner (appellant) sought the writ to compel the respondent city to pay him a disability retirement pension

without reduction thereof by reason of his having been granted and paid an award under the workmen's compensation laws.

Petitioner was fire chief of the city's fire department. On March 2, 1953, he was injured in the course of his duties. On August 1, 1956, he applied to the city for disability retirement. He was then 60 years of age, and had served in the department for more than 20 years. His retirement was granted on October 22, 1956, effective January 1, 1957, on which date he was 61 years old, his retirement pay being $429.83 per month. On August 3, 1956, he applied to the Industrial Accident Commission for an award for disability. The commission, on February 11, 1957, found that his injury of March 2, 1953, caused 39 per cent disability, but no wage loss. He was granted compensation for 156 weeks of disability at $30 per week, or $4,680, the city being ordered to pay that sum forthwith. The decision is final and the award has been paid.

On August 21, 1957, the city ordered his retirement pay stopped, for the period August 1, 1957, to June 28, 1958. The effect of this order was to withhold from his retirement pay the exact amount of the workmen's compensation award. The court found upon sufficient evidence that the workmen's compensation award was paid out of the general fund of the city, not out of the retirement fund of the police and fire department retirement plan, and denied the writ.

Three questions are presented by petitioner:

1. Was petitioner actually granted a length of service rather than a disability retirement, thereby rendering the city's action improper because there is no provision for reduction of length of service retirement pay by the amount of the workmen's compensation award?

2. If petitioner was properly granted a disability retirement, was the workmen's compensation award for a period prior to his retirement, so that no reduction in retirement pay was proper?

3. If petitioner was properly granted a disability retirement, did the city's action violate Labor Code, section 3751?*

We answer the first question in the negative and the second in the affirmative. It is therefore unnecessary to answer the third question.

---

*"No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this section is a misdemeanor."

■ 1. The answer to the first question depends upon the provisions of the city charter and of the ordinance implementing them. The charter provisions appear as subsection 2 of section 78-A of article X, added in 1946 (Stats. 1947, p. 351) and references to lettered subdivisions are to the charter. The ordinance is sections 2903-2903.34 of the San Jose Municipal Code, and references to it are by section numbers. It is made mandatory by the charter that its subdivisions be embodied in any implementing ordinance.

Provision is made for four types of retirement and retirement compensation. The first type we call "length of service." That is provided for by subdivision (b) and section 2903.07, which give to a fireman "who has completed twenty (20) years of service and is fifty-five (55) or more years of age" a right, at his request, to be retired; by subdivision (c) and section 2903.08, which give to the board of administration a right to retire a fireman having the same length of service and age; and by subdivision (d) and section 2903.11, which make retirement "mandatory" at age 65. The compensation to be paid, denominated a "pension," is fixed in sections 2903.07 and 2903.08 at "fifty per cent of the average monthly pay received by said member during the three years immediately preceding the request for retirement." This is what petitioner had been receiving. This rate of compensation is also provided for in subdivision (f), which describes the compensation as "retirement pay," and which clearly applies to all three classes of "length of service" retirement above described. None of the foregoing provisions refers to disability, and it is conceded by the city that subdivision (j) and section 2903.31, hereafter discussed, dealing with workmen's compensation payments, do not apply to an employee retired for length of service. It is also conceded by the city, and a finding was made by the court, that petitioner could have requested and would have been entitled to retirement under subdivision (b) and section 2903.07 if he had asked for it, but that he did not ask for it.

The second type we call "length of service plus disability." This is provided for by subdivision (e) and section 2903.9, which give to a member "who is disabled from any cause," and "who has served an aggregate of twenty years . . . but has not reached the age of fifty-five years" a right to apply for retirement, and also give the board a right to retire such a member. He receives the same "monthly pension" as one retired for length of service, which is in accord with the

mandatory requirements of subdivision (f), *supra,* which clearly apply to subdivision (e). There is no requirement that the disability be service-connected. The petitioner applied for, and the board purported to grant, retirement under this section, in spite of the fact that petitioner had reached the age of 55 years. The court found that petitioner was granted "a service-connected disability retirement allowance," but did not indicate under what provision of the charter or ordinance it was granted.

The foregoing are all of the provisions of the charter dealing with length of service retirement. The four subdivisions (b), (c), (d) and (e), all of which except (d) (compulsory retirement at 65) deal with one having 20 years' service, are followed by subdivision (f), referred to above, which fixes the amount of "retirement pay" at the same amount in all four cases. The next subdivision is (g), which reads as follows: "No member of the police or fire departments who has completed twenty (20) years of service shall be deprived of retirement rights for any cause whatsoever except treason or conviction of a felony." Subdivision (g) is also embodied in section 2903.25, in the form of a proviso to sections dealing with restoration to duty, petitions for retirement, safeguards on disability retirement, etc.

The third type, we call "service-connected disability," and the fourth we call "non-service-connected disability." Subdivision (j) provides: "Reasonable provisions shall be made for both service-connected disability retirements and non-service-connected disability retirements, with credit allowances in favor of the retirement fund for any industrial injury benefits paid by the City." Sections 2903.16 and 2903.18 implement this requirement. The former covers service-connected disability, and deals with a member who, "by reason of bodily injury received in, or sickness resulting from, the discharge of his duties, become[s] so . . . disabled as to render necessary his retirement from active service." It requires payment, from date of disability to date of retirement, of "compensation equal to that provided for under . . . the Workmen's Compensation Act of the State. Upon the Board . . . making its order for retirement, as hereinafter provided, the disability payment shall cease, and there shall be substituted . . . a limited annual allowance based upon the number of years actually served." It will be noted that this section contains no requirement that the member have served for any particular length of time, or that he be of any particular age.

Section 2903.17 determines the amount of the "annual allowance herein provided for." It recites the amount previously specified (by subdivision (f) and section 2903.9) "[f]or an injury occurring after twenty years of service" and continues: "therefore, for an injury occurring prior to twenty years of service an allowance shall be made based on the proportion that the number of years of actual service bears to twenty years."

The fourth type, "non-service-connected disability," is covered by section 2903.18. It is similar in its terms to section 2903.16, but specifies a minimum of 10 years' service for eligibility, and provides for "a limited annual allowance not to exceed fifty per cent of the amount herein provided for a limited annual allowance for members retired on service-connected disability."

Petitioner now contends that he falls squarely within the terms of subdivision (b) and section 2903.07, by reason of his age and length of service, and that he does not fall within subdivision (e) and section 2903.09, because he is, and was at all material times, over 55 years old. To this the city replies that, while he does fall within subdivision (b) and section 2903.07, he also falls within subdivision (j) and section 2903.16, since his disability was found to be service-connected and there is no restriction in subdivision (j) or section 2903.16 as to either age or length of service. The city points out that one who is retired for disability rather than length of service has certain advantages in that, (1) his compensation, or a part of it, may not be subject to income tax, and (2) he has reinstatement rights under sections 2903.19 and 2903.20. The latter may be somewhat theoretical in view of petitioner's age, but could be of considerable importance to other members. On the other hand, one retired for disability is subject to the provisions of subdivision (j) and section 2903.31, which section permits "only such monthly amount hereunder as will, when added to the amount allowed and received and to be received monthly under said [Workmen's Compensation] Act, equal the total monthly retirement allowance herein provided for."

We think that a persuasive argument can be made that subdivisions (b), (c), (e), (f), and (g) of the charter, and the corresponding sections of the ordinance, were intended to be the only sections dealing with a member who has over 20 years' service, and that of these, subdivisions (b) and (c) are the only ones dealing with such a member who is 55 years old or older, so that subdivision (j) and the implementing sections

of the ordinance should be construed, although they do not say so, to apply only to those with less than 20 years' service. This argument is certainly strengthened by the provisions of subdivision (g), already quoted.

Nevertheless, because petitioner himself, as well as the board of administration, construed the charter and ordinance as allowing him to obtain a disability retirement, because he does thereby gain certain advantages just mentioned, and because pension legislation is to be liberally construed in favor of the pensioner (*Lyons* v. *Hoover*, 41 Cal.2d 145, 149 [258 P.2d 4]), we hold that petitioner was properly retired under subdivision (j) and section 2903.16.

2. This brings us to the second question. Was the workmen's compensation award for a period prior to his retirement, so that no reduction in his retirement pay was proper? The Industrial Accident Commission found that petitioner's injury "caused permanent disability of 39%, entitling applicant to 156 weeks of disability payments at the rate of $30. a week in the total sum of $4,680., all of which is now due." Three years (156 weeks) from the date of injury is March 2, 1956. Petitioner was retired January 1, 1957, and his "pension" began on that date. We think that, on its face, the award is not applicable to any part of the period during which petitioner has been retired, and that therefore neither subdivision (j) nor section 2903.31, quoted above, applies, even though the award was made and paid after petitioner retired. The latter fact is immaterial, for the award was for 156 weeks, and was ordered paid in a lump sum because the 156 weeks since the accident had expired. The situation is analogous to that provided for in section 2903.16, which expressly provides for payment by the city of "compensation equal to that provided for under . . . the Workmen's Compensation Act," from the date of disability to the date of retirement. Compensation in this case, under that section, would presumably have been $30.00 per week for 156 weeks, from the date of the injury, since that is what the Industrial Accident Commission awarded. Here, again, the rule of liberal construction in favor of the pensioner comes into play, and is reinforced by the provisions of subdivision (g), quoted *supra,* page 5.

A somewhat analogous case is *Lyons* v. *Hoover, supra,* 41 Cal.2d 145. There a fireman was retired on a disability pension, and thereafter died. His widow became entitled to a pension. The Industrial Accident Commission made a disability and death benefit award, of which three-quarters was

payable to the children and only one-quarter to the widow. Nonetheless, the city reduced her pension by an amount equal to the entire award. This was held improper by the Supreme Court, which held that the reduction in her pension could be no more than the portion of the award payable to her. So, here, we think that, because the Industrial Accident Commission award, on its face, was all payable for a period prior to petitioner's retirement, no part of it can be used as the measure of any reduction in petitioner's pension. (*Cf. Larson* v. *Board of Police etc. Commrs.*, 71 Cal.App.2d 60 [162 P.2d 33] ; *Johnson* v. *Board of Police etc. Pension Commrs.*, 74 Cal. App.2d 919 [170 P.2d 48].)

3. It is, therefore, unnecessary to consider the third question raised by petitioner, as to possible conflict between subdivision (j) and section 2903.31 on the one hand, and Labor Code, section 3751, on the other.

The judgment is reversed with directions to the court below to issue a peremptory writ of mandate as prayed for in the petition.

Bray, P. J., and Tobriner, J., concurred.