[Civ. No. 22298.    First Dist., Div. One.    Feb. 16, 1965.]

CITY OF PALO ALTO, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION and RODERICK FLETCHER
GAUDIN, Respondents.

Robert E. Michalski, City Attorney and James A. Hilde-
brand, Assistant City Attorney, for Petitioner.

Everett A. Corten, Rupert A. Pedrin and Leon A. Fonnes-
beck for Respondents.

SIMS, J.—Petitioner City of Palo Alto as employer by its
petition for writ of review seeks an order annulling, vacating
and setting aside an order of the respondent Industrial Acci-

dent Commission which awarded permanent disability payments to respondent Gaudin as an employee of the city.

The facts which are not in dispute reflect: That the employee as a police officer and member of the State Employees' Retirement System was and is entitled to such retirement benefits for disability as are provided for local safety members under the provisions of the State Employees' Retirement Law,[1] and to such benefits as workmen's compensation or payments in lieu thereof as are authorized by special provisions of the Labor Code covering city policemen, city firemen and other local officers and employees within their scope;[2] that he received injuries on May 13, 1962, (aggravated in May of 1963) arising out of and in the course of his employment which resulted in permanent disability of 41 per cent under Industrial Accident Commission procedures; and that as a result thereof he became entitled to and has been allowed (1) a leave of absence with full salary in lieu of temporary disability payments for a period of one year terminating May 20, 1964, pursuant to the provisions of section 4850 of the Labor Code,[3] (2) medical, surgical, and hospital benefits pursuant to the provisions of sections 4852 and 4600-4605 of that code, and (3) effective May 21, 1964, 50 per cent of his final compensation for disability retirement allowance under the State Employees' Retirement Act. The controversy is over the jurisdiction of the commission to allow permanent disability payments under sections 4658-4662 of the Labor Code. The parties stipulated to the percentage of permanent disability and that the amounts awarded as permanent disability payments, if allowable, were properly computed.

Section 4853 of the Labor Code provides as follows: ''Whenever such disability of any such officer or employee continues for a period beyond one year, such member shall thereafter be subject as to disability indemnity to the provisions of this division other than section 4850 during the remainder of the period of said disability or until the effective date of his retirement under the State Employees' Retirement Act, and the leave of absence shall continue.''

In *City of Palo Alto* v. *Industrial Acc. Com.* (*Kidder*) (1959) 175 Cal.App.2d 83 [345 P.2d 586] the same petitioner urged that the words ''until the effective date of his retire-

---

[1]Gov. Code, tit. 2, div. 5, pt. 3, particularly §§ 20019, 20020, 20038.5, 20039, 21022 and 21294.

[2]Lab. Code, div. 4, pt. 2, ch. 2, art. 7, §§ 4850-4854.

[3]Compare the benefits provided by Lab. Code, §§ 4653-4657.

ment'' as contained in the foregoing section, precluded the award of a permanent disability indemnity to a fireman who, while entitled to all of the benefits in question in this case by reason of an injury suffered September 20, 1952, had similarly retired because of his disability. The court upheld the award and in effect restricted the application of the limitation in question to temporary disability benefits.

Faced with this decision, petitioner points to amendments of the provisions of section 4850 adopted in 1961 (Stats. 1961, ch. 1749, § 1, p. 3755) as manifesting an intent to change the rule of the decision involving *Kidder*. The respective additions and deletions are as follows (additions are italicized and deletions are in brackets; portions relating to the persons covered are omitted) : ''Whenever any . . . who is a member of the State Employees' Retirement System is disabled, *whether temporarily or permanently,* by injury or illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service . . . to leave of absence while so disabled without loss of salary, in lieu of temporary disability payments, *if any, which would be payable* under this chapter, for the period of *such disability but* not exceeding one year, *or until such earlier date as he is retired on permanent disability pension.* . . . If the employer is insured, the payments which, except for the provisions of this section, the insurer would be obligated to make as disability indemnity to the injured, the insurer may pay to the insured. [This section refers to temporary disability only.]''

All parties agree that the effect of these amendments was to insure that the employee of the class covered would receive the leave of absence and his full salary for one year, if his disability continued so long, regardless of whether the disability was of temporary or permanent nature.[4] Petitioner,

[4]The Legislative Counsel's Digest appended to Assembly Bill No. 2901, as introduced April 21, 1961, recites: ''Amends § 4850, Lab. C. Makes firemen and law enforcement officers who are members of the State Employees' Retirement System who sustain permanent disability eligible to leave of absence without loss of salary, in lieu of temporary disability payments, if any, which would be payable, for not exceeding one year or until such earlier date as they are retired on permanent disability pension.'' Petitioner has directed attention to similar language found in vol. 36, Journal of the State Bar of California, p. 789, under the heading ''Selected 1960-1961 California Legislation.'' In the latter the author states: ''This section is amended to apply to permanent as well as temporary disability (cf. *City of Palo Alto v. Industrial Acc. Commission of Cal.*, 175 C.A.2d 83, 345 P.2d 586 (1959)).'' Investigation reveals that the legislative committee of the Peace Officers' Research Association of California and the assemblyman who introduced the bill

however, attributes further consequences to the amendments. It correctly points out that, as recognized in *Kidder,* the words "until the effective date of his retirement" found in section 4853 must limit the application of the other provisions of division 4 of the Labor Code in some manner; that, as stated in *Kidder,* the limitation is imposed in connection with "such disability" as referred to at the beginning of section 4853; and that, as held in *Kidder,* that language must be interpreted as referring to the disability which was the subject of section 4850. At the time of the injury and at the time of the decision in *Kidder,* section 4850, as noted above, expressly recited, "This section refers to temporary disability only,"[5] and did not contain the reference "whether temporarily or permanently," or other qualifying language of the 1961 amendments. The opinion in *Kidder* recites: "It seems apparent that the term 'such disability' as used in section 4853 must refer to the same disability covered in section 4850 since there is no other disability to which it might refer. By express provision in the latter section the disability therein referred to is temporary disability. We must conclude that the term 'such disability' as used in section 4853 refers to temporary disability only and not to temporary and/or permanent disability." (*City of Palo Alto* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d 83, 88.)

On the basis of the foregoing, without reference to the other legislative history of article 7 and to the observations made thereon in the *Kidder* case, there is some plausibility to the argument that by the amendments the impact of the limitation in section 4853 was extended from a reference to the provisions of division 4 which provide payments for temporary disability to a general reference to the provisions of that division which provide for payments whether for temporary or for permanent disability or for both.

On the other hand no amendments were or have been made to section 4853 which ostensibly covers the situation whenever

urged adoption of the amendments because in fact disabled officers, otherwise entitled to a year's salary, were being deprived of such salary payments when an issue arose within the year as to whether or not permanent disability benefits should be awarded.

[5]This language, deleted in 1961, was added in 1949, together with the sentence which precedes it. One may speculate as to whether or not it was meant to merely apply to the provisions for reimbursing the employee out of any insurance that might exist, or to all the provisions of the section, in view of the contemporaneous amendment, hereinafter discussed, deleting the prohibitions on permanent disability payments. (Stats. 1949, ch. 1143, §§ 1, 4, pp. 2042-2043.)

disability continues for a period beyond the one year for which section 4850 provides special benefits. It would appear that such inaction by the Legislature is a tacit approval of the ultimate construction placed on section 4853 by *Kidder*, to wit, that it is no bar to the payment of permanent disability indemnity concurrently with a disability retirement pension. In any event, it compels further examination of *Kidder*, and the history of the development of the provisions of article 7 before accepting a conclusion that the Legislature by amending one section of a law intended to modify an established interpretation of another section.

In *Kidder* the opinion did state: ''In effect, the basic question before this court is whether the disability referred to in section 4853 is permanent and/or temporary disability.'' (175 Cal.App.2d 83, 87.) The conclusion that the provisions of division 4 which became inapplicable upon retirement were those relating to temporary disability was not only predicated, however, upon the language first quoted above, but also on the following: ''If this interpretation of section 4853 is correct, and we feel that it is, then the respondent commission did have jurisdiction to make an award for permanent disability after the employee had retired in view of the amendments to sections 4853 and 4854 which deleted the provision 'No disability shall be paid to any such city fireman or city policeman on account of or for a permanent disability rating made by the Industrial Accident Commission' from section 4853 and deleted the provision 'or for time after the effective date of retirement under the State Employees' Retirement System' from section 4854.'' (P. 88.)

The amendments referred to were made in 1949.[6] They not only evidence an intention to remove the prohibition against payment for benefits for permanent disability, but demonstrate that the Legislature knew how to expressly prohibit them if so minded. Furthermore, it should be noted that since 1951[7] section 4850 has prescribed that the leave of absence without loss of salary is ''in lieu of temporary disability payments under this chapter.'' The insertion of the words ''if any, which would be payable'' between the words ''payments'' and ''under'' in 1961 need not be construed as changing the language to make the extra benefits payable in lieu of both temporary and permanent payments.

The conclusion that permanent disability benefits may be

---

[6]Stats. 1949, ch. 1143, §§ 4, 5, p. 2043.

[7]Stats. 1951, ch. 1378, § 1, p. 3299.

paid despite retirement is further buttressed by statutory history and judicial construction. The provisions involved in this case, article 7, were originally patterned on those contained in article 6[8] which relate to members of the California Highway Patrol. One significant distinction, however, was the express prohibition of permanent disability payments, alluded to above, which existed in the provisions of section 4853 from its adoption in 1939 until its amendment in 1949, as contrasted with an express authorization for the payment of such benefits which was incorporated in parallel section 4803 from 1939 through 1943.[9] Provisions limiting payment of disability indemnity after the effective date of retirement, also referred to above, which were contained in section 4854 from 1939 to 1949 were dropped from the parallel section 4804 in the 1943 amendments.[10]

The provisions of article 6 as they read on their incorporation into the Labor Code, and prior to the amendments of 1939, have been construed as not prohibiting an award of compensation to a member of the highway patrol for permanent partial disability despite the fact that the employee had returned to work and was receiving a full salary. (*Department of Motor Vehicles* v. *Industrial Acc. Com.* (*Dinan*) (1939) 14 Cal.2d 189 [93 P.2d 131].) In that case although the decision notes that provisions of sections 4803 and 4804 (compare §§ 4853 and 4854 as originally adopted) which limited disability indemnity to a period prior to the effective date of retirement, it concerns itself with the provisions of section 4804 (see § 4854) prohibiting payment of disability indemnity concurrently with wages or salary payments. In strictly limiting those provisions, the following rules of construction were promulgated: "The rule is well recognized that, generally, an employee is entitled to an award for permanent disability without regard to the receipt of wages after the injury. . . . Inasmuch as state employees generally or employees in industrial life are not deprived of compensation for permanent injuries under the circumstances here existing, the rule should be the same for members of a law-enforcement branch of our government, unless some express statutory prohibition is found." (14 Cal.2d at pp. 191-192.) ▮ In answer to the

[8]Compare: Stats. 1935, ch. 449, §§ 1-4, pp. 1494-1495, as amended and incorporated as article 6 of the Labor Code in 1937 (Stats. 1937, chs. 90 and 848, pp. 285-287 and 2366) with Stats. 1939, ch. 926, § 1, pp. 2603-2605, which added article 7.

[9]Stats. 1939, ch. 902, § 3, p. 2519 and Stats. 1943, ch. 1137, § 1, p. 3082.

[10]Stats. 1943, ch. 1137, § 2, p. 3082.

contention that the words "no disability indemnity" as then used in section 4804 unequivocally meant compensation for either temporary or permanent disability, the opinion recites: "The point is not without merit, but, having in mind the direct admonition of section 3202 of the Labor Code that 'the provisions of Division IV (which includes the sections here under consideration) and Division V of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment', and the evident purpose of the law to protect and compensate those members of the highway patrol whose principal duties consist of active law enforcement, we should adopt, if possible, that construction of section 4804 which would enable the injured officer to receive the benefits of the act rather than accept a literal construction which would tend to deprive him of all disability indemnity, and not only render meaningless the language of section 4803, but also provide a rule for highway officers different from that applicable to others." (Pp. 193-194.)

In *Department of Motor Vehicles* v. *Industrial Acc. Com.* (*Reed*) (1948) 83 Cal.App.2d 671 [189 P.2d 730], this court had before it the provisions of article 6 as they read and were applicable to an injury suffered March 29, 1939. It was recognized that the employee was entitled to the leave of absence with pay (§ 4800) and permanent disability payments, but the court held that the article as it then read and section 4661 which then prohibited payment of both temporary and permanent disability payments required that there be credited against the permanent disability award the amount of permanent disability payments awarded for the period during which he received full salary. ■ The decision furnishes the following qualification on the rule of liberal construction: "In construing a statute liberally courts are not permitted to pervert its purpose. Liberality of interpretation cannot go the length of accomplishing an end not within the terms of the statute, however desirable such a result might be in the view of the commission or of the court." (P. 677.)

Amendments to article 6 in 1939 and 1943 made it clear that the references in section 4803 and 4804 were to temporary disability only and deleted any mention to the date of retirement as a limiting factor.[11] The effect of these amendments was to give the disabled highway patrolman injured

---

[11]Stats. 1939, ch. 902, §§ 3 and 4, p. 2519; Stats. 1943, ch. 1137, §§ 1 and 2, p. 3082.

thereafter a right to collect a permanent disability award for a period concurrent with the special leave of absence with earnings without any offset for the period of the latter. (*Department of Motor Vehicles* v. *Industrial Acc. Com.* (*Cope*) (1947) 78 Cal.App.2d 626 [178 P.2d 43].)

The article has not been amended since and it may be concluded from the decisions and the amendments that a highway patrolman in return for the year's leave of absence with full pay has suffered no loss of benefits, except those that otherwise might be payable for temporary disability during such period as he receives such full pay.

The local officers and employees subject to the provisions of article 7 did not progress so rapidly. As noted above from 1939 to 1949 there was an express prohibition against the payment of benefits for permanent disability in section 4853, and both sections 4853 and 4854 referred to the date of retirement as a limiting factor.[12] A Senate Interim Committee on Workmen's Compensation Benefits in 1947 reported a recommendation that section 4853 be amended by deleting the last paragraph with the following comment: "Under this provision firemen and policemen do not receive permanent disability awards if they receive a pension. As this provision was changed for all other employees of the State it was an apparent oversight that similar provisions relating to city firemen and policemen were not similarly changed." (Report of Senate Interim Committee to the Senate on Workmen's Compensation Benefits, Cal. Legislature, Fifty-Seventh Session, 1947, p. 89.)

It is concluded that the amendments referred to in *Kidder* not only merit the interpretation therein adjudged on analysis of their content, but also on analysis of the general scheme of the development of the provisions of protection for employees covered.

Finally, it is noted that whatever interrelationship of benefits may exist between disability pension or death benefits and disability or death indemnity benefits in other plans,[13] or be-

---

[12]See *Mairani* v. *City of South San Francisco* (1948) 13 Cal. Comp. Cases 208, denying either further temporary, or any permanent disability benefits to a fireman who retired for disability after receiving his wages for a year after the injury.

[13]Attention has been directed to the Los Angeles and San Francisco systems. (See: *City of Los Angeles* v. *Industrial Acc. Com.* (Morse) *(Cal.App.) 39 Cal.Rptr. 20; Los Angeles City Charter, § 182½; and Charter of the City and County of San Francisco, § 168.1.6 and § 171.1.6.)

---

*A hearing was granted by the Supreme Court on August 5, 1964.

tween death benefits under the retirement act and similar benefits under workmen's compensation,[14] such precedents are not controlling here. Prior to 1943 the retirement law expressly provided for a reduction of a retirement allowance or death benefit payable under the retirement act to the extent that workmen's compensation benefits were available in the case of those employees covered by articles 6 and 7 of the Labor Code.[15] In that year the Legislature withdrew the deduction and enacted provisions for subrogation.[16] Furthermore, it is noted that section 4661 of the Labor Code has been amended to permit concurrent award of temporary and permanent disability compensation.[17] In the face of this general program and policy it would be inconsistent to now reconsider, modify, and restrict *Kidder* on the basis of amendments to the law which are otherwise explained as expanding its benefits.

The award is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 14, 1965.

---

[14]Lab. Code § 4707.

[15]State Employees' Retirement Act. § 101; see Stats. 1943, ch. 640, § 21.5, p. 2275, and provisions of § 101 prior thereto.

[16]Stats. 1943, ch. 1136, § 1, p. 3081, and see §§ 21202 and 21450-21455 of the Government Code.

[17]Stats. 1945, ch. 1335, § 1, p. 2506; Stats. 1947, ch. 1132, § 1, p. 2572 and Stats. 1949, ch. 107, § 1, p. 346.