[Civ. No. 25595.   First Dist., Div. One.   Dec. 2, 1968.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and GEORGE J. ENGLER, Respondents.

772

Thomas M. O'Connor, City Attorney, and Donald J. Garibaldi, Deputy City Attorney, for Petitioner.

Everett A. Corten and Rupert A. Pedrin for Respondents.

ELKINGTON, J.—This case concerns section 168.1.6 of the Charter of the City and County of San Francisco. That section was designed to prevent "double recovery" by a police officer for one duty-incurred disability through receipt of both disability retirement allowances under San Francisco's charter and benefits payable under the workmen's compensation laws.

The retirement provisions of the charter, which include section 168.1.6, constitute part of the contract of employment between San Francisco and its policemen. It has been stated that such provisions " 'are an inseparable part of that contract.' " (*City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers)*, 259 Cal.App.2d 163, 166 [66 Cal.Rptr. 283]; *Holt* v. *Board of Police etc. Comrs.*, 86 Cal.App.2d 714, 716 [196 P.2d 94].) The retirement provisions of the charter are not only the organic law of San Francisco, but are also the law of the state, with the force of legislative enactments. (*C. J. Kubach Co.* v. *McGuire*, 199 Cal. 215, 217 [248 P. 676]; *City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers)*, *supra*; *Adams* v. *Wolff*, 84 Cal.App.2d 435, 440 [190 P.2d 665].)

The appellate courts of this state have repeatedly held that a city may protect itself against paying twice (through the workmen's compensation provisions of the Labor Code and its own retirement system) for the same industrial disability. Because of the arguments presented to us it seems profitable at this point to review the pertinent cases.

*City of Los Angeles* v. *Industrial Acc. Com. (Morse)*, 63 Cal.2d 263 [46 Cal.Rptr. 110, 404 P.2d 814], concerned section 182½ of that city's charter, relating to pensions following duty-incurred disability or death of Los Angeles policemen and firemen. The section contained provisions designed to prevent double payments for the same disability or death.[1] On behalf of herself and two children, the widow of a fireman who died in the line of duty applied to the Industrial Accident Commission for the statutory death benefits. A full award, payable in weekly amounts, was ordered. The city paid the award as ordered but attempted, as apparently permitted by section 182½, to reduce the monthly pension payments by the same amount. The widow thereupon applied for a lump sum commutation of the compensation award; the purpose being to secure its immediate payment, thus preventing the city from thereafter reducing her monthly pension "in amount to the difference between the amount of pension provided for . . . , and the total amount of such compensation or award granted and paid . . . until the total amount [of compensation] shall have been fully paid." (See fn. 1, *ante*.) The commission granted the commutation request on the theory that the widow "should receive both full compensation and pension payments."

The court rejected the Industrial Accident Commission's theory. It stated (p. 264): "*We have held in Fraide*[2] *that this theory is erroneous*: *that the city is entitled to a partial credit against workmen's compensation. The city, therefore,*

[1]As relevant here section 182½ provided as follows: "any payments made under the provisions of this article shall be first applied to payment of such compensation or award and any balance of such payments made pursuant to the provisions of this article shall be deemed to be pension payments; and it is hereby provided that the pension provided for in this article for such member . . . shall be reduced in amount to the difference between the amount of pension provided for in this article, and the total amount of such compensation or award granted and paid under such general law until the total amount awarded under such general law shall have been fully paid." (Cf., *City of Los Angeles* v. *Industrial Acc. Com. (Fraide)* 63 Cal.2d 242, 244 [46 Cal.Rptr. 97, 404 P.2d 801].)

[2]*City of Los Angeles* v. *Industrial Acc. Com. (Fraide)* 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d 801].

*may be entitled to a credit on future compensation liability or may be entitled to reduce future pensions. . . .*"[3] (Italics added.) The commutation order of the commission was annulled and the cause was remanded for further proceedings.

*City of Los Angeles* v. *Industrial Acc. Com. (Fraide) supra,* 63 Cal.2d 242. This case concerned a policeman, permanently disabled in line of duty, who was granted a disability pension. He thereafter applied for a workmen's compensation disability award. Los Angeles Charter section 182½ (see fn. 1, *ante*) was then in effect. The commission granted the compensation award, but refused to allow the city any credit for the disability pension paid, against such award. The court annulled the commission's order, stating (p. 253): ". . . the city has substantially contributed to the pension fund. Moreover, *we cannot properly sanction 'double recovery' for the employee.* . . . [¶] The city, *therefore, should receive a partial credit against workmen's compensation liability for the disability pension it pays each employee.* The credit should bear the same ratio to workmen's compensation liability as the 'city's contributions' bear to the 'total contributions.' . . ."[4] (Italics added.)

*Stafford* v. *Los Angeles etc. Retirement Board,* 42 Cal.2d 795 [270 P.2d 12]. Stafford was a deputy sheriff, retired for industrial disability in January 1950. In May 1950 he was given a lump sum workmen's compensation award which was paid by the county forthwith. Thereafter Stafford applied to the retirement board for a pension based on the same disability. His pension rights were set forth in the County Peace Officers Retirement Law. (Gov. Code, §§ 31900-32082.) Section 32080 provided (p. 797): " 'It is the intention of this chapter [the Retirement Law] that pensions allowed for injury incurred in line of duty shall not be cumulative with the

[3]The court's reference to a "partial credit" and that the city *"may* be entitled to a credit" resulted from the possible future application of "res judicata" and "collateral estoppel," and from the fact that a portion of the monthly pension payments appeared to flow from contributions made by the fireman. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide) supra,* 63 Cal.2d 242.) None of these considerations is applicable here.

[4]This is the so-called "Fraide formula" devised by the court which denies a municipality credit for that portion of pension payments reasonably resulting from contributions made by the disabled or deceased policeman or fireman. In the case at bench, the city making no claim as to the portion of the pension resulting from Engler's contributions, it is stipulated that the "Fraide formula" is inapplicable.

benefits under workmen's compensation awarded for the same injury or disability.' Section 32081, hereinbefore referred to and relied upon by respondent board, provides that 'If any beneficiary receives compensation under any workmen's compensation act or by virtue of any judgment obtained against the county . . . for disability arising out of and in the course of the employment of a member or pensioner, the benefits shall be modified as follows: (a) 'If the amount is paid in one sum . . . the beneficiary shall not receive any retirement payments until the total amount of the retirement payments which would otherwise be paid equals the total amount received under the workmen's compensation act or by virtue of the judgment. . . .' ''

Los Angeles County refused to make any payment on account of the pension until (using the language of subdivision (a) of section 32081) ''the total amount of the retirement payments which would otherwise be paid equals the total amount received [by Stafford] under the workmen's compensation act.'' Stafford sought mandamus relief to compel the county to pay the pension without credit for the previously paid compensation award. From an order denying mandamus he appealed. Affirming, the Supreme Court stated: ''. . . a *contrary view would defeat the declared policy of section 32080 that disability pensions shall not be cumulative with workmen's compensation benefits awarded for the same disability.*'' (Italics added; p. 798.)[5]

*Lyons* v. *Hoover,* 41 Cal.2d 145, 148 [258 P.2d 4], concerned the City of Sacramento Charter section 173, subsection (j), which provided: '' 'That portion of any allowance payable because of the death or retirement of any such employee which is provided by contributions of the City shall be reduced, in the manner fixed by the City Council, by the amount of any benefits payable to or on account of such person, under the Workmen's Compensation, Insurance and Safety Law of the State of California. It is the express intent that payments under said Workmen's Compensation, Insurance and Safety Law shall be a deductible credit against any allowance under the Retirement System which is provided by contributions of the City payable to or on account of the death of any such person; that double payments, in whole or in part, at the expense of the taxpayers, shall not be permitted.''

---

[5]Government Code sections 32080-32082 were repealed in 1959.

Plaintiff Lyons' husband had been retired from the city's fire department on a disability pension. Upon his death she was granted a widow's pension of $75 per month. Thereafter the Industrial Accident Commission awarded her *and her three minor children* a disability and death benefit of $5,910.71. The city council, endeavoring to take advantage of the charter section 173, subsection (j), reduced plaintiff's pension "by the sum of $71.31 per month until the amount withheld should equal the total of the compensation award." The superior court held that the city was entitled to no reduction.

The Supreme Court reversed, holding, as to the widow, it was proper for the city to withhold pension payments until the payments she would otherwise have received equalled the portion of compensation payments that she (not the children) was entitled to receive. Referring to the effect of Sacramento's charter section 173, subsection (j), the court stated (pp. 148-149) : "It is clear that if a widow receives all of a compensation award, the portion of her pension allowances provided by the city's contributions can be reduced until the sums withheld equal the total amount of the award." However, the court held that the portion of the award granted the children could not be offset against the widow's pension.

*Healy* v. *Industrial Acc. Com.*, 41 Cal.2d 118 [258 P.2d 1]. Healy was a police officer disabled in the line of duty. He was thereafter paid full salary for two years until his retirement on a disability pension of $283.50 per month. Thereafter he received a compensation award of $7,200 for permanent disability and $18.46 a week for life. The commission, however, allowed the city credit against the award for the monthly pension payments made to Healy. *The Supreme Court upheld the city's right to take such a credit where (as in the case at bench) the pension resulted from contributions made by the city alone.* However, it appeared that a portion of Healy's pension might be attributable to contributions made by him. For that reason the proceeding was remanded to the commission to determine if Healy had made such contributions, and if so, for an appropriate reduction in the credit to be allowed the city.[6]

*City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers)*, *supra*, 259 Cal.App.2d 163. Reimers, an Oakland fireman,

---

[6]The proper method of computing such a reduction was later devised by the "Fraide formula." (See fn. 4, *ante*.)

was retired for a service-incurred industrial disability in 1952. He received a pension of 75 percent of salary until his death in 1964. In 1965 his widow, although herself receiving a death allowance, in a derivative claim based on such rights as were held by her husband during his lifetime, sought a workmen's compensation award for the disability incurred by him in 1952. Oakland claimed credit against such an award for disability retirement payments made to Reimers during his lifetime. The city's charter section 249 (2) provided, among other things: "It is the intention of this section that [retirement] allowances granted to or on account of members of the [Police and Fire Retirement] System for injury, illness or death incurred-in the performance of duty shall not be cumulative with benefits under the Labor Code of California awarded as the result of the same injury, illness or death."

The appeals board granted a compensation award of $8,250 for Reimers' disability but denied any credit to the city. Since the disability pension payments had all been made in Reimers' lifetime, it was, of course, impossible to discontinue such payments until the amount thereof would have equalled the workmen's compensation award. The court, however, pointed to Labor Code section 4909 which expressly allows the appeals board "in fixing the amount of compensation to be paid" to take into account any "benefit received by the injured employee during the period of his incapacity" which was not due and payable under the workmen's compensation provisions of the Labor Code. Recognizing the strong policy against such double payments, particularly when prohibited by municipal charter or ordinance, the court held the appeals board to have abused its discretion in failing to give effect to Oakland's charter section 249 (2) as permitted by Labor Code section 4909.

*Barnett* v. *Brizee*, 258 Cal.App.2d 97 [65 Cal.Rptr. 493]. This case concerns the City of Oakland Charter provision which was the subject of *City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers)*, *supra*, 259 Cal.App.2d 163. Involved was an attempt to take credit against the pension of a fireman's widow for a workmen's compensation death benefit award to the widow *and her minor child*. It was properly held that the charter's credit provision applied only when the recipients of the city's pension and of the compensation award are "the same person or same dependent." The court (p. 98) iterated the rule announced in *Lyons* v. *Hoover*,

*supra,* 41 Cal.2d 145: " 'It is clear that if a widow receives all of a compensation award, the portion of her pension allowances provided by the city's contributions can be reduced until the sums withheld equal the total amount of the award.' "

*O'Brien* v. *City of San Jose,* 180 Cal.App.2d 609 [4 Cal. Rptr. 744]. O'Brien, Chief of San Jose's Fire Department, sustained an injury in the course of his duties. He was retired for disability on a pension of $429.83 per month. The following year he was granted a lump sum workmen's compensation disability award in the amount of $4,680, which sum the city was ordered to, and did, pay forthwith. The city then ordered O'Brien's retirement pay stopped for 11 months, the effect of which was to withhold the amount of the compensation award. O'Brien, by a mandamus proceeding, sought to compel the city to pay his retirement allowances without reduction. The superior court denied the writ.

San Jose's charter section 2903, subdivision (j), had a "double recovery" provision which read: "Reasonable provisions shall be made for both service-connected disability retirements and non-service-connected disability retirements, *with credit allowances in favor of the retirement fund for any industrial benefits paid by the City.*" (Italics added; p. 612.) This section was qualified, however, by section 2903.31 which specifically provided that the *monthly* disability retirement payments should be in an amount which "when added to the amount allowed and received and to be received *monthly* under said [Workmen's Compensation] Act, equal the *monthly retirement allowance herein provided for.*" (Italics added.) An obvious purpose of the provision was to insure that each month the retired employee would, in spite of any credit or setoff otherwise applicable, receive sufficient funds for his sustenance, even though he may at some earlier time have received a compensation award.[7] The appellate court, although recognizing the policy against "double recovery," was obliged to respect the charter provisions which prevented O'Brien's monthly payments from being reduced because of the earlier paid compensation award.

It seems proper to emphasize here that *Stafford* v. *Los Angeles etc. Retirement Board, supra,* 42 Cal.2d 795, also involved an attempt to offset monthly pension payments

[7]San Francisco's charter, as will be seen, has a somewhat similar provision.

against an *earlier* lump sum compensation award. In *Stafford* there was no provision (such as that of San Jose) guaranteeing minimum monthly payments even though the effect was to deny credit. The court in *Stafford* held the city to be entitled to credit. The effect was to deny Stafford any disability pension payments until the amount which would otherwise have been paid equalled the amount of the previously paid compensation award.

Three cases are called to our attention which seemingly limit the right of a municipality to offset pension payments against a compensation award. These cases are *Holt* v. *Board of Police etc. Comrs.*, 86 Cal.App.2d 714, 717 [196 P.2d 94], *Johnson* v. *Board of Police etc. Pension Comrs.*, 74 Cal.App. 2d 919 [170 P.2d 48], and *Larson* v. *Board of Police etc. Comrs.*, 71 Cal.App.2d 60 [162 P.2d 33]. Each dealt with a ''double recovery'' charter provision of the City of Long Beach which provided: ''This [pension] provision is intended to be in lieu of and take the place . . . of the Workmen's Compensation . . . Act . . . and any person who would be entitled to a pension . . . hereunder shall be deemed to have waived all provisions under the Workmen's Compensation . . . Act.'' In each case the appellate court held that while the acceptance of a pension was a waiver of workmen's compensation, the converse was not true, and the acceptance of a compensation award was not a waiver of pension rights. Thus, the right of the city to pay but once for an industrial disability depended on the fortuity (or design) of whether pension or compensation was first applied for. These cases were considered in *Stafford* v. *Los Angeles etc. Retirement Board, supra*, 42 Cal.2d 795, 798-799. After discussing the ''declared policy . . . that disability payments shall not be cumulative with workmen's compensation benefits awarded for the same disability,'' the court in *Stafford* stated that *Holt, supra, Johnson, supra,* and *Larson, supra,* were ''neither compelling nor persuasive to a contrary holding.'' (P. 799.)

██ From the foregoing authorities it will be seen that under appropriate charter provisions a municipality has broad power to prevent double disability payments to the same person. The order in which the respective payments, awards or allowances are payable is immaterial. Pension payments may be reduced and offset against an earlier and fully paid compensation award. (*City of Los Angeles* v. *Industrial Acc. Com. (Morse) supra*, 63 Cal.2d 263; *Stafford* v. *Los*

*Angeles etc. Retirement Board, supra,* 42 Cal.2d 795.) Earlier pension payments may be credited against a later compensation award. (*City of Oakland* v. *Workmen's Comp. App. Bd.* (*Reimers*), *supra,* 259 Cal.App.2d 163.) And where award and pension are payable concurrently one may be offset or credited against the other to the end that total payments shall not exceed the stipulated monthly pension. (*City of Los Angeles* v. *Industrial Acc. Com.* (*Fraide*), *supra,* 63 Cal.2d 242; *Lyons* v. *Hoover, supra,* 41 Cal.2d 145; *Healy* v. *Industrial Acc. Com. supra,* 41 Cal.2d 118; *Barnett* v. *Brizee, supra,* 258 Cal.App.2d 97.) This flexible right to take credit was made clear in *City of Los Angeles* v. *Industrial Acc. Com.* (*Morse*) *supra,* 63 Cal.2d 263, 264, where the court stated, "The city, therefore, may be entitled to a credit on future compensation liability or may be entitled to reduce future pensions. . . ."

George J. Engler, the subject San Francisco police officer of the case before us, sustained injury in the course of his employment in 1957. However, he continued in his employment on full salary until October 1, 1965, when he was granted a monthly disability retirement allowance as a result of the residual effect of his 1957 injury. On June 20, 1966, petitioner San Francisco filed an application with respondent Workmen's Compensation Appeals Board to determine its liability, if any, for permanent disability indemnity, and its right to credit against such liability its payments of disability retirement allowances to Engler.

The evidence before the appeals board indicated that respondent Engler has been receiving from San Francisco monthly allowance of $689.87 pursuant to his disability retirement. Of this sum, $41 represented an annuity derived from the contributions made by Engler to San Francisco's retirement system during his employment; under the "Fraide formula" it is not here at issue. The balance, $648.87, was provided directly by San Francisco.

It was stipulated by Engler and San Francisco in the proceedings below that the injury and disability which resulted in Engler's disability retirement allowances was the same injury and disability which was the subject of the workmen's compensation proceedings before the appeals board. The same stipulation was repeated by the parties appearing at oral argument before this court.

San Francisco contended that it was entitled to credit to

the extent of its payments of $648.84 per month against any award of permanent disability indemnity which might be made. The appeals board awarded Engler "Permanent disability indemnity in the total sum of $1890.00 payable forthwith." It denied any credit.

San Francisco seeks relief in this court by writ of review from the award of the appeals board. It contends that the board acted in excess of its powers and abused its discretion in refusing to allow credit against Engler's retirement allowance.[8]

The charter provisions here at issue provide as follows:

"Section 168.1.6. That portion of any allowance payable because of the death or retirement of any member of said department, which is provided by contributions of the City and County, shall be reduced in the manner fixed by the Board of Supervisors, by the amount of any benefits, other than medical benefits, payable to or on account of such person, under the Workmen's Compensation Insurance and Safety Law of the State of California and because of the injury or illness resulting in said death or retirement. Such portion which is paid because of death or retirement which resulted from injury received in or illness caused by performance of duty, shall be considered as in lieu of any benefits, other than medical benefits, payable to or on account of such person under the said law of the State of California, and shall be in satisfaction and discharge of the obligation of the City and County to pay such benefits."

Respondent appeals board construes section 168.1.6, with San Francisco's Municipal Code section 267 (quoted *infra*), to allow credit only for such portion of the city's disability retirement allowances as is payable *concurrently* with the workmen's compensation permanent disability benefits. Having found Engler's compensation benefits to have been due and payable (but not paid) prior to the commencement of his disability retirement payments, it accordingly denied any credit.

It is concluded that the appeals board's construction of section 168.1.6 is incorrect and that the board abused its discretion and exceeded its powers in denying the claimed credit.

_____

[8]For reasons not made apparent to us Engler denied jurisdiction in the appeals board to make any award in his behalf. He has not appeared in the instant proceedings before this court.

■ We first point out that San Francisco's charter should be construed, if reasonably possible, to avoid double liability to the city for one disabling injury to an employee. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63 Cal.2d 242, 253; *City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers), supra,* 259 Cal.App.2d 163, 166-167.) The rule that pension laws should be liberally construed to carry out their beneficent purposes (see *England* v. *City of Long Beach,* 27 Cal.2d 343, 346 [163 P.2d 865]) has no application here. That rule is not designed to encourage a construction which would cause an employer city, already paying agreed disability retirement allowances, to become doubly liable for the same disability.

Section 168.1.6 contains two sentences. We must, if reasonably possible, give significance to each of these provisions. (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal. 2d 640 [335 P.2d 672].) To achieve harmony and give force and effect to the whole section seeming inconsistencies should be reconciled. (*Burks* v. *Poppy Constr. Co.,* 57 Cal.2d 463, 470 [20 Cal.Rptr. 609, 370 P.2d 313]; *Hough* v. *McCarthy,* 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276].)

■ We construe the first sentence of section 168.1.6 to provide for offsetting against a retired policeman's disability allowance, workmen's compensation payments *previously made* because of the injury which brought about his later retirement. The provision obviously recognizes that when a retired policeman has previously received compensation benefits, offsetting such earlier payments would usually result in decreased or discontinued monthly retirement allowances over extended periods of time. Such a practice would also frequently result in inadequate monthly funds for the living requirements of the retired policeman and his dependents. To alleviate such probable hardship, San Francisco's Board of Supervisors is permitted by section 168.1.6 to fix the *manner* of such retirement allowance reduction. This the board of supervisors has done by the enactment of Municipal Code section 267, which, as pertinent, states: "If said benefits under said Compensation Act shall run concurrently with the allowance under this Article and shall be due the beneficiary in payments which are equal to or less than said portion of the retirement allowance, then said portion shall be reduced each month by the amount of such other benefits so due during said month, and the beneficiary shall have no more right

to such reduction than if the Retirement System had never existed. . . . It is the purpose of the preceding paragraphs of this section to reduce the pension portion of the retirement allowance payable from the Retirement Fund, by the amount due to the beneficiary concurrently with said portion, under said Compensation Act, . . ."[9]

The second sentence of section 168.1.6 relates to workmen's compensation payments payable and made *after* the police officers' retirement. It provides that such portion of the retirement allowance as *is paid* shall be considered as in lieu of any workmen's compensation disability benefits *payable* for the same disability "*and shall be in satisfaction and discharge of the obligation of the City and County to pay such benefits.*" (Italics added.) The sentence gives no authority whatever to the board of supervisors; consequently Municipal Code section 267 does not apply to cases covered by it.

The second sentence of section 168.1.6 is relevant to the issue before us.[10] Engler has been, and is being, paid disability retirement allowances by San Francisco in excess of the appeals board's award for the same disability. San Francisco is therefore, under established law, entitled to credit such retirement allowances against Engler's compensation award.

San Francisco could properly, by charter provision or ordinance, have required full credit against its disability retirement allowances for payments made on workmen's compensation awards for the same disability. *So long as the allowance and award were for the same disability it would be immaterial that one had accrued or was payable, or was paid, prior to the other.* Such credit would be permissible even though it resulted in no monthly payments being made to the retired employee until the exhaustion of the credit; it was expressly so held in

---

[9]The appeals board referee reported: "I find that upon enactment of Section 168.1.6 of the Charter that the Board of Supervisors had in mind the existence of Section 267 Part I of the Municipal Code and the Board of Supervisors in that manner have fixed the method by which disability retirement benefits are reduced. *Pitts* v. *Perluss*, 58 C.2d 824 at page 838 [27 Cal.Rptr. 19, 377 P.2d 83]; *Universal Eng. Co.* v. *Board of Equalization*, 118 C.A.2d 36 at page 43 [256 P.2d 1059]; Section 1963(7) C.C.P."

[10]It is noted that in the proceedings below Engler conceded the applicability of the second sentence of section 168.1.6 to his case. He stated that he had "accepted the [retirement allowances] granted to him by [San Francisco] as in lieu of [workmen's compensation] benefits and in full satisfaction of the obligation of the City and County of San Francisco to pay same."

*Stafford* v. *Los Angeles etc. Retirement Board supra,* 42 Cal.2d 795. In that case it will be recalled that the Los Angeles Retirement Board had refused to make any payment on account of Stafford's pension until " ' 'the total amount of the retirement payments which would otherwise be paid equals the total amount received [by Stafford] under the workmen's compensation act.' '' (P. 796.) The court affirmed the retirement board's order, stating (p. 798) : ''[A] contrary view would defeat the declared policy of section 32080 that disability pensions shall not be cumulative with workmen's compensation benefits awarded for the same disability. . . .''

San Francisco was considerate of the welfare of its retired disabled policemen in its desire to assure to them adequate monthly living funds even at the probable cost of denying to itself complete credit for workmen's compensation awards already paid. This gratuitous act does not result in the denial of a right to take credit under charter section 168.1.6 against an unpaid workmen's compensation award which accrued before retirement when doing so does not decrease monthly payments below the amount of its agreed disability retirement allowances.

It is strongly urged that since the compensation award to Engler had accrued, and was payable, before his pension payments started, it is somehow unreasonable or improper now to credit one against the other. Had the award been paid when it accrued, we are told, the city would not now be entitled to a corresponding credit or offset. This is not the law. In *Stafford* v. *Los Angeles etc. Retirement Board, supra,* 42 Cal.2d 795, it was expressly held that the city could withhold disability retirement payments until the amount of retirement payments which would otherwise have been paid equals the total amount of a previously paid compensation award.

The decision of the Workmen's Compensation Appeals Board that ''Applicant City and County of San Francisco is not entitled to credit for disability retirement benefits against permanent disability indemnity awarded herein'' is annulled.

Molinari, P. J., concurred.

SIMS, J.—I dissent.

In its reply to the answer to its petition the City acknowledges: ''Petitioner does not base its claim of credit upon any

contention that respondent Engler was not entitled to permanent disability because he had resumed work during the period for which permanent disability indemnity was awarded. Certainly, an injured employee may be entitled to permanent disability indemnity while he is actually working. There is no question of 'double recovery' in such circumstances. He receives permanent disability indemnity for the residual effect of his injury; he receives his salary for the services which he performs for his employer.''

It is established that the award represents an allowance of a rating of 13½ percent permanent disability for an injury incurred July 6, 1957, which entitled the employee to 54 weeks of disability payments at the rate of $35 per week in the total sum of $1,890. According to Labor Code section 4650 these payments should have been made ''on the eighth day after the injury becomes permanent or the date of last payment for temporary disability, whichever date first occurs.''

The City's petition alleges that the injury caused disability which caused the employee to be off work for intermittent periods, that he was compensated by full pay, and that he last received medical treatment, which was furnished by the City, on October 25, 1965.

At the hearing it was stipulated that all temporary disability indemnity has been paid in full during some period subsequent to his injury (July 6, 1957), but during the year 1957.

On this record it would appear that the employee was entitled to receive 54 weeks of disability payments during a period commencing no later than January 1, 1958. The question is, can this right be taken away from him because it was not adjudicated until November 14, 1966 by the referee's decision and affirmed until April 2, 1968 by the Appeals Board, and because in the interim the City had paid him a retirement disabiity pension for a period commencing October 1, 1965? It appears that if he had been paid the $1,890 in 1957, 1958 or 1959, or at any time prior to October 1, 1965, the City could not deduct it from his retirement allowance commencing October 1, 1965 under the first sentence of charter section 168.1.6 because of the provisions of Municipal Code section 267. On the other hand, if the compensation benefits had outlived his retirement, the retirement allowance would properly have been reduced each month by the amounts received as compensation *thereafter*, but there would be no offset as to compensation payments already received.

Under the second sentence if the retirement allowance had started at the time of the cessation of temporary disability and a determination of the right to permanent disability and the payments therefor were delayed for months or years, the City unquestionably would be entitled to offset the payments made for retirement allowance as a credit against the subsequently adjudicated permanent disability payments.

In this case, however, if the partial disability payments had been made when they were supposed to have been made, the first sentence, not the second, would govern. Should this result be thwarted because of the delay in litigation?

The "double payment" here is payment of salary in 1957-1958 or 1959, together with a permanent disability allowance. The City concedes this can be done. (See *Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 367 [282 P.2d 64]; *Department of Motor Vehicles* v. *Industrial Acc. Com.* (*Dinan*) (1939) 14 Cal.2d 189, 191-192 [93 P.2d 131]; and *City of Palo Alto* v. *Industrial Acc. Com.* (*Gaudin*) (1965) 232 Cal. App.2d 305, 310 [42 Cal.Rptr. 822].) The retirement allowance for which the City claims credit is that payable under section 168.1.3 of the charter which provides: "Any member of the Police Department who becomes *incapacitated for the performance of his duty*, by reason of bodily injury received in, or illness caused by the performance of his duty, shall be retired, . . ." (Italics added.) It was stipulated that the "defendant employee was retired on disability retirement by the . . . City . . . for the same injury alleged in the application" which was filed to determine permanent disability and the right of the City to a credit against any award made. The retirement which commenced October 1, 1965 therefore resulted from the compensable injury. It is questionable, however, if the awards were to compensate for the same disability. The compensation award was for a permanent partial disability which apparently did not interfere with the employee's capacity to perform his duties until some eight years after the accident. The construction urged by the City would deprive the employee of any compensation for the eight-year period in which he was permanently, although only partially disabled from an injury suffered in the course of his employment. Such a construction should be avoided as unreasonable if the reconciliation of the general and local law so permits.

The present decision leaves the question of whether the employee gets the "double payment" to be determined by the

relationship between the time the award is made and the time of his retirement. The second date, as demonstrated above, is a relevant factor, but the former should not control. In the absence of specific language to the contrary, a payment for a subsequent period should not discharge a payment which accrued and was payable, but withheld, whether wrongfully or in ignorance of liability, for a prior period.

There is nothing inconsistent with this conclusion in the cases which have reviewed the allowance of credit for retirement or death benefits paid under a retirement system against a subsequently obtained compensation award. (See *City of Los Angeles* v. *Industrial Acc. Com.* (*Fraide*) (1965) 63 Cal. 2d 242 [46 Cal.Rptr. 97, 404 P.2d 801] ; *Healy* v. *Industrial Acc. Com.* (1953) 41 Cal.2d 118 [258 P.2d 1] ; and City of *Oakland* v. *Workmen's Comp. App. Bd.* (*Reimers*) (1968) 259 Cal.App.2d 163 [66 Cal.Rptr. 283].) Nor do the cases, which have discussed a reduction of pension payments because of a compensation award, authorize such a deduction for compensation payments which have accrued and are payable for a period antedating the accrual of the payments under the retirement system. (See *Stafford* v. *Los Angeles etc. Retirement Board* (1954) 42 Cal.2d 795 [270 P.2d 12] ; *Lyons* v. *Hoover* (1953) 41 Cal.2d 145 [258 P.2d 4] ; *Barnett* v. *Brizee* (1968) 258 Cal.App.2d 97 [65 Cal.Rptr. 493] ; *O'Brien* v. *City of San Jose* (1960) 180 Cal.App.2d 609 [4 Cal.Rptr. 744] ; and *Holt* v. *Board of Police etc. Comrs.* (1948) 86 Cal. App.2d 714 [196 P.2d 94].) From all that appears in any of the foregoing cases the compensation and retirement system benefits accrued substantially simultaneously. In any event, in none of the cases, other than *O'Brien,* is the issue of concurrency raised or discussed. *O'Brien,* as stated by the majority, turned upon the construction of the provisions of the city charter which limited the disability retirement benefits to such sums as when added to the monthly compensation benefits would produce the total contemplated allowance. The court held that since the compensation benefits arose prior to the time of commencement of the retirement allowance, the City was liable for the full amount of the latter benefits without credit for prior compensation benefits. As an alternative ground of decision the court in *O'Brien* applied the principle of *Lyons* v. *Hoover, supra,* to the effect that retirement system death benefits payable to one dependent could not be reduced by the payment of compensation death benefits to other dependents, and observed: ''So, here, we think that, because

the Industrial Accident Commission award, on its face, was all payable for a period prior to petitioner's retirement, no part of it can be used as the measure of any reduction in petitioner's pension. [Citations.]'' (180 Cal.App.2d at p. 615.) So here the City should not be able to claim the contrary credit, that compensation payments awarded for a period which expired before the disability retirement benefits accrued may be reduced by such payments.

I would affirm the decision of the Appeals Board.

The petition of respondent Workmen's Compensation Appeals Board for a hearing by the Supreme Court was denied February 19, 1969. McComb, J., and Peters, J., were of the opinion that the petition should be granted.